### Ex Parte Tom B. Pollard.

#### No. 3531. Decided May 22, 1907.

**1.—Local Option—Election Precinct—Constitutional Law.**

An election precinct is not a subdivision within the contemplation of article 16, section 20 of the Constitution, for the purposes of holding local option elections.

**2.—Same—Local Option Territory—Change of Law.**

Whenever a local option law is once legally put into operation in a given territory, it must remain in force until it has been voted out by the voters of the territory where such law was originally vitalized.

**3.—Same—Amended Statutes—Statutes Construed—Status of Territory.**

Prior to the act of 1893 a different rule applied with reference to the change of local option territory, but where an election was held under the terms of the amended statutes passed in 1893, the status of the territory under local option would remain under the operation of local option until an election is held by the voters of the original territory. Distinguishing: Whisenhunt v. State, 18 Texas Crim. App., 491; Woodlief v. State, 21 Texas Crim. App., 412,

**4.—Same—Commissioners Court—Justice Precinct—Local Option.**

Whenever the commissioners court has divided a county into justice precincts and an election for local option has been held in either of them, it will remain in that territory until the people living within that territory shall vote it out; and the power of said court to change the precinct lines of that territory cannot affect the status of local option as it existed at the time of the change.

**5.—Same—Constitutional Law—Authority to Vacate Law.**

Under article 16, section 20, neither the commissioners court nor any other body has authority to vacate and set aside a regular instituted local option law, this can only be done by a vote of the people in the territory affected.

**6.—Case Stated—Local Option Not Repealed.**

Where local option was declared by the people of a certain justice precinct on the 14th of December, 1893, which contained a certain election precinct which was afterwards attached to a different justice precinct by order of the commissioners court, and an election was held in said last justice precinct in 1896, embracing said detached election precinct, and which election resulted against local option and defendant was arrested for selling intoxicating liquor in such detached election precinct. Held: that local option was still in operation by virtue of the election held therein in 1893, while said territory was a part of said former justice precinct.

From Caldwell County.

Original habeas corpus proceedings asking release of relator from arrest for violation of the local option law.

The opinion states the case.

*A. B. Storey* and *Will G. Barber,* and *R. H. Ward,* for relator.—The rule being that in voting local option, the people vote it as the law is, we insist this must mean the law as it would reasonably have been understood by the voters at the time and not as finally reasoned out by a divided court, where constitutional grounds are invoked to limit the apparent or permissible meaning of words. That the people as well as this court, after the enactment of the law of 1893 (in the light of the amendment of 1891) understood "Subdivisions" in a different sense from what now seems to be held. See Speagle v. State, 31 S. W. Rep., 171; Williams v. State, 31 S. W. Rep., 654; Ex parte Smith, 30 S. W. Rep., 223; Ex parte Brown, 34 S. W. Rep., 131; Efird v. State, 71 S. W. Rep. 957.

Relator presents and relies upon the proposition that the commissioners court of Caldwell County had the power to (as they did) detach the affected territory from precinct No. 4, and attach it to precinc' No. 1 and that when that was done its status as to local laws was con trolled by the conditions existing in No. 1. See Drummond v. Lowery 88 Ga., 716; Hackney v. Leake, 91 Ga., 141.

*F. J. McCord,* Assistant Attorney-General; *A. B. Coopwood,* and *J. B. Hatchitt,* County Attorney, for respondent.

DAVIDSON, Presiding Judge.—In 1882 the commissioners court of Caldwell County divided that county into justice precincts. In 1893, on the 14th day of December, a local option election was held in pre-

cinct No. 4, resulting favorable to local option. Within the bounds of justice precinct No. 4 was what is termed election precinct No. 13 and in said justice precinct was contained precinct No. 13 at the time the local option law went into effect. In 1894 the commissioners court of said county detached the whole of election precinct No. 13 from justice precinct No. 4, and attached it to and made it a part of justice precinct No. 1, and to that extent it diminished the area of said justice precinct No. 4, and, of course, to that extent increased the area of justice precinct No. 1. In 1896 an election was held in that portion of justice precinct No. 1, which embraced election precinct No. 13, and resulted in a decided majority against local option. It had been understood among the people living in the territory where this last election was held that they were not under the operation of the local option law, and from that time on the sale of intoxicants was authorized by the issuance of license, etc., in said territory.

It is contended, as far as we understand the applicant's position, that the commissioners court was authorized to order an election in election precinct No. 13, whether it was contained within the bounds of justice precinct No. 4 or precinct No. 1. We do not agree with this contention. In Efird v. State, 71 S. W. Rep., 957, it is held that an election precinct is not a subdivision within the contemplation of article 16, section 20, of the Constitution, for the purposes of holding local option elections. The former appeal in that case held otherwise, but the latter decision announces the correct doctrine. This proposition of applicant is also erroneous from another standpoint, to wit: whenever a local option law is once legally put into operation in a given territory, it must remain in force until it has been voted out by the voters of the territory where such law was originally vitalized. This is supported by the following authorities: Medford v. State, 74 S. W. Rep., 768; Woods v. State, 75 S. W. Rep., 37; Nelson v. State, 75 S. W. Rep., 502; Ex parte Fields, 86 S. W. Rep., 86, 1022, and quite a number of other cases. Then under this view of the question whether election precinct No. 13 remained in the justice precinct No. 4, or was detached from that precinct and attached to precinct No. 1, would make no difference; it having been placed under the operation of the local option law under the act of 1893 in justice precinct No. 4, it must remain, so far as the local option law is concerned, a part of that territory; at least it will remain under the operation of the local option law by virtue of the election held in and for said justice precinct No. 4; and until an election is held by the original territory of precinct No. 4 voting it out of said precinct No. 4, said election precinct No. 13 would remain under the operation of the local option election held in precinct No. 4, held in December, 1893. It would seem from the decision in the Wisenhunt case, 18 Texas Crim. App., 491 and in Woodlief's case, 21 Texas Crim. App., 412, that prior to the act of 1893 a different rule applied, but this election in justice precinct No. 4 was held under the terms of the amended statute passed in 1893, and Wisenhunt and Woodlief

cases, supra, are not authority. It is also contended in substance that by reason of the act of the commissioners court changing election precinct No. 13 from justice precinct No. 4 to justice precinct No. 1, that said change operated a repeal of the local option law in regard to the territory embraced in election precinct No. 13. To this proposition we cannot assent. It is true, as contended by applicant's attorneys, in a very ingenious argument and an elaborate and able brief, that the commissioners court is practically omnipotent in regard to laying off or dividing the county into justice precincts, and into commissioners precincts, and that the only limitation upon the commissioners court, in regard to these matters, must be found within the Constitution itself. We are inclined to think these propositions are sound. A commissioners court had divided Caldwell County, as it was authorized to do, into justice precincts, and in one of these, No. 4, a local option election had been held by virtue of the constitutional provision provision (art. 16, sec. 20, and the legislative act) authorizing such election. Whenever a commissioners court sees proper to and does act in dividing a county into justice precincts, that act is final within the discretion of that court until another takes place, but whenever the commissioners court has divided a county into these justice precincts, and an election for local option has been held in either of them, it will remain in that territory until the people living within that territory shall vote it out. The almost omnipotent power of the commissioners court to change the precinct lines of that territory and enlarge or diminish it, cannot affect the status of local option as it existed at the time of the change. While the commissioners court has a right to change the boundaries, they have no right or authority to repeal or set aside or vacate, or vitiate a local option election under the terms of article 16, section 20, and manner of holding, etc., as provided by the Legislature. Article 16, section 20, requires the Legislature to provide laws whereby the people living within these divisions or subdivisions may from time to time hold these local option elections, and the Legislature saw proper to fix the time for these recurring elections at two years. The commissioners court may divide the county into justice precincts, and are authorized to do it, but when that has been done, and the people, under the terms of section 20, of article 16, have placed the law by their vote into operation in that justice precinct, while the commissioners court may have authority to change the boundaries of that territory for justice-precinct-purposes, they have no authority to repeal the local option law as put in operation; that must be done only by a vote of the people in the territory. The Constitution does not clothe the commissioners court or any other body with authority to vacate and set aside a regular instituted local option law. There is no way by which this can be done, as we understand the matter, except by a contest in some manner authorized by law, and fixed by legislative authority for such contest or a second election. We are, therefore, of opinion that election precinct No. 13 is still under the operation of the local option law by

virtue of the election held in justice precinct No. 4 while it formed a part of that precinct, and that the commissioners court in exercising its proper authority in transferring that election precinct to another justice precinct, could not and did not vacate the operation of the local option law in the territory changed.

It is ordered that relator pay all costs accruing in this court.

Relator is remanded to custody.

*Relator remanded to custody.*

Brooks, Judge, absent.