(July 18, 1914.)

# THE VILLAGE OF AMERICAN FALLS, a Municipal Corporation, Respondent, v. W. A. WEST, Appellant.

[142 Pac. 42.]

NUISANCE—ACTION TO ABATE NUISANCE—MUNICIPAL CORPORATION—PARTY PLAINTIFF—CREATION OF NEW COUNTIES—NEW COUNTIES—PROHIBITION TERRITORY—LICENSED SALOON LAWFUL BUSINESS—LICENSED SALOON MAY NOT BE ABATED AS A NUISANCE.

1. A village is a proper party plaintiff to bring an action in the district court to obtain the abatement of a public nuisance causing special injury to the rights, morals or interests of such village, even though such nuisance be outside the village boundaries.

2. Where a new county is created from territory which was formerly comprised in "dry" counties and also territory that was formerly part of a "wet" county, and the legislature makes no pro-

vision as to whether the new county shall be a "wet" or "dry" county until a local option election is held in such county, *held*, that the whole of the new county so created becomes a "wet" county and subject to the license system until such time as the voters of the county shall vote the county "dry" under the provisions of the local option statute.

3. A saloon regularly licensed to sell intoxicating liquor within wet territory is thus expressly authorized by law to sell such liquor. And even though the results of such business be disastrous and deplorable, and are the direct cause of what would amount to a public nuisance had such license not been granted, the running of such saloon in the usual and regular manner authorized by law under such license cannot legally be abated as a nuisance, because sec. 3659, Rev. Codes, provides that "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance."

4. If the owner of a saloon takes an unfair advantage of his opportunity to handle liquor, and goes beyond his rights, granted under his license, to do things that amount to a public nuisance, such things should be abated, even though they are done in connection with a licensed saloon or are an effect thereof. The proper conduct of a lawful business cannot be enjoined, but its abuses and excesses may be prevented.

APPEAL from the District Court of the Fifth Judicial District for the County of Power. Hon. Alfred Budge, Judge.

Action to abate a nuisance. Judgment for plaintiff. Defendant appeals. *Reversed.*

P. E. Cavaney and Baird & Davis, for Appellant.

Within its territorial limits the right of a municipality to maintain the action depends upon the same condition as the right of the individual or private corporation; it must have suffered some special injury. (*Morris Canal & C. Co. v. Jersey City,* 12 N. J. Eq. 252, 547.)

Even in cases where municipalities have been, by their charters, duly authorized to pass ordinances to remove and abate any nuisance injurious to the public health, it is recognized that such provision delegates authority to abate a nui-

sance only within its corporate limits.    (*Village of Pine City v. Munch,* 42 Minn. 342, 44 N. W. 197, 6 L. R. A. 763.)

If Blaine county was wet prior to the formation of Power county, that portion of Power county taken from Blaine county would remain wet as part of Power county until the individuals of Power county, as a county, should hold the necessary election, as provided by the laws of the state for determining the question as to whether Power county should be wet or dry.    (Woollen & Thornton, Intox. Liquors, sec. 548, note 25; *Prestwood v. State,* 88 Ala. 235, 7 So. 259; *Oxley v. Allen,* 49 Tex. Civ. App. 90, 107 S. W. 945; *Ex parte Pollard,* 51 Tex. Cr. App. 488, 103 S. W. 878; *In re Cunningham,* 21 Can. Prac. 459; *Ex parte McCleaver,* 21 N. B. 315.)

"If a local option county be divided and an entirely new one created, local option continues in force in the new county."    (Woollen & Thornton, sec. 548, note 25; *Parker v. State,* 126 Ga. 443, 55 S. E. 329; *Moore v. State,* 126 Ga. 414, 55 S. E. 327; *Amerker v. Taylor,* 81 S. C. 163, 62 S. E. 7.)

"Where the statute designates who may maintain a proceeding to abate a liquor nuisance it can only be maintained by the person designated."    (Joyce on Intoxicating Liquors, sec. 624; *Applegate v. Winebrenner,* 66 Iowa, 67, 23 N. W. 267; Thornton & Woollen, Intoxicating Liquors, sec. 585.)

Equity will not enjoin a criminal nuisance merely to subserve the public welfare.    There must be a statute declaring the criminal act to be a nuisance *per se.*    (*State v. Vaughan,* 81 Ark. 117, 118 Am. St. 29, 98 S. W. 685, 11 Ann. Cas. 277, 7 L. R. A., N. S., 899; *Marshall v. Board of Managers,* 201 Ill. 9, 66 N. E. 314; *Indian Land & Trust Co. v. Shoenfelt,* 135 Fed. 484, 68 C. C. A. 196; *Stevens v. De La Vaulx,* 166 Mo. 20, 65 S. W. 1003; *Hedges v. Dixon Co.,* 150 U. S. 182, 14 Sup. Ct. 71, 37 L. ed. 1044.)

If the court should find that a nuisance exists in this case, only a qualified decree could be entered prohibiting the particular acts complained of and not to close up the entire business.    (*Lorenzi v. Star. Market Co.,* 19 Ida. 674, 115 Pac. 490, 35 L. R. A., N. S., 1142.)

The lower court in the case at bar made a decree absolutely prohibiting the selling of intoxicating liquors at the said Doc West saloon. The court cannot restrain the business carried on on said premises in a lawful way. (*Fresno v. Fresno Canal etc. Co.*, 98 Cal. 183, 32 Pac. 944, 37 Cent. Dig. "Nuisance," 199; *Georgia R. R. & B. Co. v. Maddox*, 116 Ga. 54, 42 S. E. 315; *Green v. Lake*, 54 Miss. 540, 28 Am. Rep. 378; *Cleveland v. Citizens' Gas Co.*, 20 N. J. Eq. 201; *Chamberlain v. Douglas*, 24 App. Div. 582, 48 N. Y. Supp. 710; *Weaver v. Kuchler*, 17 Okl. 189, 87 Pac. 600; *Wilcox v. Henry*, 35 Wash. 591, 77 Pac. 1055; *Minke v. Hopeman*, 87 Ill. 450, 29 Am. Rep. 63; *Richards v. Holt*, 61 Iowa, 529, 16 N. W. 595; *Sawyer v. State Board of Health*, 125 Mass. 182; Dec. Dig. "Nuisance," secs. 35–84; 29 Cyc. 1249; *Haggart v. Stehlin*, 137 Ind. 43, 35 N. E. 997, 22 L. R. A. 577.)

Bissell & Baum, for Respondent.

"Where the complaint alleges the corporate capacity of the plaintiff and that by some threatened act defendant will create a nuisance or is about to commit some act that will endanger the health of the inhabitants of the city or village or that it will result in the damage to the property of the city or village or may be the means of causes of action for damage against the city or village, equity will grant relief." (*Village of Sandpoint v. Doyle*, 11 Ida. 642, 83 Pac. 598, 4 L. R. A., N. S., 810.)

"A municipal corporation, as such, has a right to invoke the aid of equity to prevent a threatened injury to its corporate property or to the lives, health and comfort of its citizens, even though the source of such threatened injury is outside of the corporate limits of the municipality." (*Baltimore v. Warren Mfg. Co.*, 59 Md. 96; *Indianapolis Water Co. v. American Straw Board Co.*, 57 Fed. 1000; *McCallum v. Germantown Water Co.*, 54 Pa. 40, 93 Am. Dec. 656.)

DAVIS, District Judge.—This is an action wherein the village of American Falls prays for an injunction to prevent the running of a saloon by the defendant outside the limits

of such town but near-by and easily accessible therefrom, on the ground that said saloon is within what should be "dry" territory, and, although licensed, that it has no legal right to exist, and that it results in a public nuisance injuriously affecting the decency, good name and reputation of the inhabitants of American Falls, and has become a menace to the peace, health, safety and morals of the citizens thereof.

The district court found for the plaintiff and issued the injunction sought, from which judgment the defendant appeals.

The most serious questions raised are as to the sufficiency of the complaint; the right of a village to sue to abate a nuisance outside of its limits; as to the jurisdiction of the court in such cases; whether the territory where the saloon was located was wet or dry; and whether or not the saloon as conducted resulted in a public nuisance causing special injury to plaintiff.

A village is a corporate entity with the right to sue in a proper court, if necessary to protect or secure its rights. (Sec. 2236, Rev. Codes.) Such a village is a municipal corporation created to assist in the civil government of its people and the territory within its limits. It has the power and duty of preserving the health and protecting the personal rights, morals and property of its inhabitants, and as an effective means of doing so such village may bring an action in the district court in order to secure the removal and abatement of a public nuisance causing special injury to the rights, morals or interests of such village. If the people within a village, in their aggregate capacity, are specially injured by a public nuisance, such village is directly interested in having such nuisance abated. And while a village itself might abate a nuisance within its limits, in order to abate a public nuisance outside its boundaries it is probably necessary, and undoubtedly proper, for it to apply to a court of equity for aid in protecting it from such harmful influence. (1 Dillon, Mun. Corp., par. 379; *Village of Sandpoint v. Doyle,* 11 Ida. 642, 83 Pac. 598, 4 L. R. A., N. S., 810; *Village of Pine City v. Munch,* 42 Minn. 342, 44 N. W. 197, 6 L. R. A. 763; *Mayor*

*etc. of Baltimore v. Warren Mfg. Co.,* 59 Md. 96; *Indianapolis Water Co. v. American Strawboard Co.,* 57 Fed. 1000; *McCallum v. Germantown Water Co.,* 54 Pa. 40, 93 Am. Dec. 656.)

The complaint states a cause of action, and the district court had jurisdiction to try the case.

The next question is: Was the saloon attacked as a nuisance legally authorized to exist? It had a license from the county to run, but the authority of Power county to issue such license is denied, on the ground that Power county was created out of portions of Bingham, Cassia and Oneida counties, theretofore dry, and a smaller portion, with fewer people, from Blaine county, previously wet. And it is held by the trial judge and contended by the plaintiff that the new county should therefore be dry in its entirety. But there is no law in Idaho, nor implied power, whereby a portion of a wet county may be made dry merely by joining it with an area of dry territory, however large or populous, when creating a new county. The provisions of the local option law are made applicable only by a vote of the people of the territory affected, and there is no showing here that the people of Power county had indicated their desire for a dry county by a majority vote in favor thereof, or otherwise, at the time this action was brought.

And yet I dissent from the other extreme view adopted by a majority of this court, and announced in paragraph 2 of the syllabus, to the effect that a new county created from other counties becomes wet automatically by virtue of such creation, even though such area had been dry theretofore. The most logical position to hold is that where a new county is created out of portions of other counties, some of which have adopted the provisions of the local option law, and some are operating under the license system, that portion of the new county which was subject to the license system at the time of the creation thereof continues subject to the law permitting licensed saloons to exist, and the dry area remains dry, until the status of such new county in its entirety relative to the liquor question is legally determined.

The legal status of an area relative to the liquor question should not be changed by a law·on another subject entirely, when such question is not involved or directly considered. And when a community has settled the question, its action should not be set aside until some direct action by the inhabitants of such area may be taken on the subject.

Under the decision rendered by a majority of this court, the liquor question will hereafter be a direct issue in every county division fight, and although either is in itself a serious problem, when considered together it may reasonably be anticipated that in the future practically all of the time of the legislature will be occupied struggling with such controversies. And in addition to being supported by reason, this view is maintained by a large majority of the authorities. (Woollen & Thornton, Intoxicating Liquors, sec. 548, cases there cited and notes.)

While the evidence is not before this court, it appears from the findings of fact made by the district court that the people of American Falls may well be solicitous as to the peace, morals and property interests of their community. The saloon which the plaintiff seeks to abate is undoubtedly a menace to the welfare of the inhabitants of American Falls and is a public nuisance in the ordinary sense of the expression. Probably some of the evil results complained of would flow naturally and regularly from the saloon as such, although it were conducted according to law, and the same things in effect may emanate from any saloon, but they are probably greater in degree in this instance because of the monopoly of business enjoyed by the defendant over a large territory and the local conditions under which he· operates. It appears, however, that some of the injuries complained of flow from improper and illegal acts of the defendant because of the manner of conducting his saloon.

The officers vested with authority to license a saloon may properly consider the moral effect of such business upon the community where located, and the people of the county and the state are entitled to debate the advisability of allowing saloons to exist. but this court can neither exercise discretion

as to what law shall be invoked, nor consider the propriety of the law applicable. It is our duty to enforce the law which governs the matter just as it is written in the codes, and if the law ought to be changed in order to afford full relief from the evils alleged, or if the terms of some other law should be made applicable, then the judgment and action of those who have authority to make or apply other laws must be appealed to for such relief.

The local option prohibitory law is not applicable to the territory where the saloon complained of is located and the law authorizing a license to sell liquor is in force therein. And a saloon regularly licensed to sell intoxicating liquor within wet territory is expressly authorized by law to sell such liquor. And even though the results of such business be disastrous and deplorable, and are the direct cause of what would amount to a public nuisance had such license not been granted, the running of such saloon in the usual and regular manner authorized by law under such license cannot legally be abated as a nuisance, because sec. 3659, Rev. Codes, provides that "Nothing which is done or maintained under the express authority of a statute can be deemed a nuisance."

Where the legislature expressly authorizes a thing to be done, under certain conditions, and thereby legalizes it, the doing of that thing as authorized would not be a public nuisance subject to abatement, although it inevitably results in a great public injury; but to justify acts that would amount to a public nuisance, if not expressly authorized, they must be the natural, probable and reasonable result of the thing authorized.

However, if the saloon owner takes an unfair advantage of his opportunity to handle liquor, and goes beyond the rights granted under his license, to do things that amount to a public nuisance, such things should be abated, even though such things are done in connection with a licensed saloon or are an effect thereof. The proper conduct of a lawful business cannot be enjoined, but its abuses and excesses may be prevented. (*Lorenzi v. Star Market Co.*, 19 Ida. 674, 115 Pac. 490, 35 L. R. A., N. S., 1142.)

It appears, therefore, that the saloon involved in this action has a lawful right to exist so long as it is run properly within the terms of the law, but that all acts and things done or permitted outside of the regular and proper operation of the saloon and the natural results therefrom, that cause a public nuisance specially affecting the plaintiff, may and should be abated.

The judgment of the district court is reversed, and the case is remanded with directions to the trial court that such court enter a judgment authorizing and permitting the defendant to conduct the saloon referred to in the pleadings and to sell intoxicating liquor therein in the manner allowed by his license and the law applicable thereto. But that he be enjoined from operating said saloon in any manner other than that authorized by law and the license granted him by Power county; from running said saloon in a disorderly manner; from urging, inducing or compelling persons purchasing liquor from him to convey the liquor outside the building into American Falls, or to drink the same upon the' highways, byways or in the streets, alleys or public or private buildings of said town; from allowing women or minors in said saloon; from selling liquor to intoxicated persons or minors; from allowing children to resort to said saloon for any purpose; and that in case he does not comply strictly with the foregoing terms of said injunction while engaged in so conducting said saloon, that he shall not operate or maintain said saloon at all.

Each party to pay one-half the costs on appeal.

SULLIVAN, J., Dissenting in Part and Concurring in Part.—(1) I am unable to concur in the conclusion reached by Judge Davis, to the effect that the village is a proper party plaintiff in this action. Under the law the village is not authorized to maintain an action to abate a public nuisance, such a one as is alleged in the complaint, since it clearly appears that the nuisance, if one exists, affects all of Power county and several other counties in southeastern Idaho, and is not located within the corporate limits of the Village of

American Falls. Under the provisions of sec. 3666, Rev. Codes, a public nuisance may only be abated by "public body or officer authorized thereto by law." We have no statute whatever authorizing a village to bring an action for the abatement of a nuisance such as the one alleged in this case, outside of its corporate limits. Under the 4th section of the local option act (Sess. Laws 1911, p. 30), the prosecuting attorney of any county is authorized to bring an action in the name of the state to abate and perpetually enjoin the common nuisance of selling liquor in a prohibition district. Since the trial court found that said Power county was a prohibition district, it is clear under the law that the village had no right to maintain the action, as it should be brought by the prosecuting attorney in the name of the state. After the trial court had concluded that said Power county was "dry," it was error for it not to dismiss the case and permit the prosecuting attorney of said county to institute the action authorized by said section 4 of the local option act.

(2) I cannot concur with Judge Davis in holding that said Power county, having been created out of parts of "dry" counties and a part of a "wet" county, that the territory taken from the said "dry" counties remains "dry" and the territory taken from the "wet" county remains "wet." Under the provisions of our local option statute, no county can become "dry" except by a majority vote of all the people of such county. That law does not provide for a county part "wet" and part "dry," under any conditions or circumstances.

(3) I concur in the conclusion reached by Judge Davis that the judgment of the trial court must be reversed and that a judgment should be entered in favor of the defendant permitting him to conduct his saloon under the laws of the state. Of course, if he is conducting his business in a way and manner not authorized by law and is creating a public nuisance, he may be enjoined from those specific acts which he is not authorized to do under the intoxicating liquor and other laws of this state, by the state or persons authorized by law to bring an action for that purpose.

AILSHIE, C. J., Concurring in Part and Dissenting in Part.—I agree with Judge Davis that the city of American Falls can maintain this action, and I agree with Justice Sullivan that when a new county is created by act of the legislature, it becomes a "wet" county or a "dry" county in its entirety and not in spots. The legislature has a right to say whether the new county will be wet or dry until an election takes place under the local option law, but if the legislature fails to provide which it will be, then, under the general law, it would be subject to the license system.

I dissent from a reversal of the judgment. The record brought before us shows that the appellant was maintaining a nuisance, and the trial court has the right and power to abate a nuisance. A lawful business may degenerate into a nuisance or be so conducted as to become a nuisance, and the same may be true of a business conducted on mere sufferance of the state.