48 So.2d 823 (1950)
HUGHES
v.
PARISH COUNCIL OF PARISH OF EAST BATON ROUGE.
No. 3295.
Court of Appeal of Louisiana, First Circuit.
November 22, 1950.
*824 Sam J. D'Amico, Baton Rouge, for appellant.
R. Gordon Kean, Jr., Baton Rouge, for appellee.
LOTTINGER, Judge.
In this case the plaintiff, O. M. Hughes, is seeking a Writ of Mandamus, ordering and requiring the Parish Council of the Parish of East Baton Rouge to issue him a license or permit to conduct a retail Class A beer business at his place of business situated on U. S. Highway 61, near the Zachary Crossroads in the Parish of East Baton Rouge.
The facts are not disputed. In 1937, pursuant to the provisions of Act No. 17 of the First Extra Session of 1935, Dart's Statutes, Code Cr.Proc. § 1362.41, the residents of the then existing Fourth Ward of the Parish of East Baton Rouge, petitioned the Police Jury for an election to determine whether Ward Four should be a dry ward. The election was held in May 1937, and the vote was "for liquor, 45", "against liquor, 247". Thereafter, the Police Jury spread upon its minutes, the results of the *825 election. Nothing further was ever done and that area then comprising Ward Four has been maintained and is now maintained as a dry area.
Plaintiff contends that he is entitled to the permit and that the Parish Council, as the Governing Body of the Parish, should be mandamused to issue him the permit for the following reasons:
First: That no ordinance was ever adopted in accordance with Section 6 of Act No. 17 of the First Extra Session of 1935, by the Police Jury.
Second: That Ward Four of the Parish of East Baton Rouge no longer exists because the people of the Parish did in 1948 under the provisions of a constitutional amendment, set up a new form of government and established new wards in the Parish and Ward Four was merged with wet wards to become the new Ward Two of the Parish of East Baton Rouge.
The District Court rendered judgment in favor of the defendants, the Parish Council of the Parish of East Baton Rouge and the individual members thereof, and against the plaintiff, O. M. Hughes, rejecting the plaintiff's demands and now plaintiff has appealed.
Dealing with the first point at issue in this case, we will turn to Section 1 of Act No. 17 of the First Extra Session of 1935, and examine its contents, which states as follows: "If any parish, ward or municipality, at any election held for the purpose, which shall be conducted as nearly as possible in accordance with the election laws of the State, shall, by a majority vote of its duly qualified electors voting at any such election, determine that the business of producing, manufacturing, rectifying, blending or handling, selling, using, distributing, storing, or consuming of alcohol or intoxicating liquors as defined in Section 2 of this Act, otherwise than when prescribed by a licensed physician as a medicine, in such parish, ward or municipality shall not be licensed or permitted therein, such business shall not therein be licensed or permitted."
Therefore, according to this section of this act, the qualified voters of Ward Four of the Parish of East Baton Rouge had a right to ask for and hold such an election. This election was held in May of 1937, and the vote was "for liquor, 45", "against liquor, 247". It is admitted that at the time of the holding of the election, there was within the Parish of East Baton Rouge, duly constituted, a Fourth Ward. It further appears at a meeting of the Police Jury of the Parish of East Baton Rouge, that they received a report from the supervisors of election and ordered the results of that election spread on the minute book of the Police Jury, which result was as stated above, "for liquor, 45", "against liquor, 247". It further appears that the Police Jury of said Parish did nothing more than the ordering of the spreading on the minute book, the results of said election. That they at no time subsequently enacted an ordinance with penal clauses, prohibiting the selling, etc. of alcohol or intoxicating liquors, in said ward.
It is contended by plaintiff that the Police Jury, to put the results of the election in effect, should have adopted such an ordinance. To bring light on this point we examine Section 6 of Act No. 17 of the First Extra Session of 1935, which is as follows: "In order to make the local option herein provided for effective in those parishes, wards and municipalities where any of the aforesaid business is prohibited by the vote of the electors, the governing authorities of any parish or municipality may provide for such prohibition by ordinance, and may provide penalties for the violation of such ordinance, not, however, to exceed a fine of $500.00, or imprisonment for six months, or both, at the discretion of the court, and such governing authorities may provide additional imprisonment not to exceed six months for failure to pay any fine." (Italics ours.)
These two sections must be construed as a whole to understand the true Legislative intent, together with the mandate and results of an election held for such a purpose. We do not believe that after the holding of the election, the Police Jury could have issued any permit to authorize the sale of liquor in Ward Four of the *826 Parish. Neither do we believe that the Police Jury can now take advantage of its failure to pass or enact an ordinance prohibiting the sale, etc., of liquor in Ward Four of the Parish. Section 1 of the act, as above quoted, specifically makes it mandatory upon the Police Jury that after the holding of such an election and the results be in favor of not selling intoxicating liquors therein that "such business shall not therein be licensed or permitted", so we do not see how the Police Jury can now be asked or mandamused to issue such a license or permit after having had an expression by legal election duly called for the purpose of determining the will of the people of Ward Four.
We further do not think that the Police Jury can now take advantage of its failure to enact such an ordinance as provided for in Section 6 of the act. This section does not make it absolutely mandatory on the Police Jury to pass such an ordinance but specifically uses the term "may provide for such prohibition by ordinance".
It is plaintiff's contention that the Police Jury should have and was required to pass such an ordinance and there has been cited to this Court two cases by both plaintiff and defendant, State v. Emerson, 197 La. 783, 2 So.2d 212 and Perot et al. v. Police Jury of Natchitoches Parish et al., 208 La. 1, 22 So.2d 666. The Perot case cited, supra, was a case where a number of residents of the Parish of Natchitoches brought suit to annul an ordinance of the Police Jury prohibiting the sale of intoxicating liquors in the Parish. It appears that the ordinance was adopted after a Local Option Election had been called and held as requested by residents of the Parish and a majority of the votes cast in the election were in favor of prohibition. The plaintiffs in this suit seek to enjoin the parochial authorities from enforcing the ordinance for various grounds and one of the grounds was that the City of Natchitoches is governed by a special charter, under which the municipality and not the Police Jury is given exclusive authority to regulate saloons and shops for retailing liquor. The Supreme Court in commenting on this contention, stated as follows, 22 So.2d on page 669:
"Under Act No. 17 of the First Extra Session of 1935, Local Option Law, the parish is made a unit in which all the municipalities within its territorial limits are included. The statute also provides the method by which the voters of the parish may exercise their right to have determined whether the parish should be wet or dry, and that is through the police jury. The police jury is merely the instrumentality designed by law through which the will of the voters of the parish may be asserted by means of a parish-wide election.
"It is the mandatory duty of the police jury to call the election when it has been requested to do so by petitions signed by the requisite number of qualified voters of the parish and properly certified by the Registrar of Voters. It is also its mandatory duty to adopt an ordinance giving effect to the result of the election. The ordinance results from the mandate of the people and not from any attempt on the part of the police jury to exercise governmental powers over the municipality."
In this case, of course, an ordinance had been adopted by the Police Jury of that parish but the question at issue in that case was not exactly the same as the case at bar. In the Perot case quoted above, the Supreme Court was not deciding on the question of the failure of the Police Jury to enact such an ordinance but was merely commenting as to what they thought was the right of the Police Jury with reference to the enactment of such an ordinance. The Perot case is not exactly apropos to the question at issue in this case and counsel for the plaintiff nor defendant have cited any case from this state that has exactly decided the point as raised in the first issue by plaintiff in the case at bar.
In the State v. Emerson case cited supra, that was a case, where the defendant, Emerson, was charged with having violated Ordinance 7 of 1940, of the Police Jury of Jackson Parish, Louisiana, and the defendant in that case raised the point that the Parish did not have the right to pass such an ordinance prohibiting the possession of *827 intoxicating liquors and so forth, and the Supreme Court in that case stated as follows: "After the electors of the parish had by a majority vote prohibited the liquor traffic in that parish, the police jury was authorized to adopt and did adopt, an ordinance to make the prohibition effective, and as a means to that end, the selling or keeping for sale of such liquors for beverage purposes was made unlawful. The authority of the Police Jury to make it unlawful to sell intoxicating liquors for beverage purposes is not questioned. Since it was vested with such authority, it unquestionably was authorized to prohibit the keeping of such liquors for the purpose of violating the prohibition law. That was a legitimate method of suppressing a traffic which had been outlawed by the electors of the parish." [197 La. 783, 2 So.2d 214.] (Italics ours.)
The Emerson case, cited supra, only passed on the question of whether or not the Police Jury of the Parish of Jackson had the right to enact such an ordinance and in the Emerson case the Supreme Court, commenting on the right of the Police Jury, merely stated that, "That was a legitimate method of suppressing a traffic which had been outlawed by the electors of the parish." The Emerson case is not directly in point with the question raised here, nevertheless, we do not believe that the failure of the Police Jury of the Parish of East Baton Rouge in enacting an ordinance, suppressing the liquor traffic, which question had been passed on by the electors of said ward, can now be taken advantage of by the plaintiff in this case in a mandamus proceeding to force the officials of that parish to grant him a permit or license to engage in such traffic.
We say this in view of the provision of Section 6 of the Act, wherein it states that the Police Jury may provide for such prohibition by ordinance and may provide for penalties to make the Local Option herein provided for effective in those parishes or wards. The Legislature did not use the term "shall provide" as it used the term "shall not be licensed or permitted therein" as is provided in Section 1 of the Act. This we believe, disposes of the first question raised in plaintiff's case.
We now come to the second point raised in plaintiff's suit, which in our opinion is a more serious one and that is, that Ward Four of the original parish of East Baton Rouge no longer exists, because the people of the parish in 1948, under the provisions of a constitutional amendment, set up a new form of government and established new wards in the parish and Ward Four was merged with so-called wet wards, to become new Ward Two of the parish of East Baton Rouge. It is plaintiff's contention that because of this merger, the original Ward Four of the Parish is no longer in existence insofar as the effect of the referendum is concerned, and it has lost its identity and is subject to the general law of the state, that the new Ward Two should be wet, wherein the liquor traffic should be permitted therein until an election is called and held and that question determined.
It is true that Ward Four no longer exists as a subdivision of the parish and is now a part of larger area comprising Ward Two of said parish. The question is whether this had the effect of wiping out the previous action of the people. Plaintiff contends that it did and that now in order for the area comprising Ward Four to remain dry it is necessary for the whole new Ward Two to vote and establish itself as a dry ward. The people of East Baton Rouge Parish had the power under Article 14, Section 3(a) of the Constitution of the State of Louisiana, to establish in the manner therein provided, the government for the parish, and the several municipal corporations and other political subdivisions and districts situated therein. Under paragraph 2 of said Section, the Constitution provides as follows:
"(2) Subject to the Constitution and laws of this state with respect to the powers and functions of local government, as distinguished from structure, organization and particular distribution and redistribution of such powers and functions among the several units of local government within the *828 Parish, such plan of government may provide, among other things:
"(a) For consolidation, or reorganization, of all or part of the local governmental units, agencies and subdivisions in the parish, for the elimination or transfer of power and functions of such units, agencies and subdivisions, for the creation of one or more new local governmental units, agencies and subdivisions, for the reorganization of one or more local governmental units, agencies or subdivisions, for the extension of municipal limits, and for all matters necessary or appropriate to the effectuation of such provisions, including, without limitation, the assumption by one local governmental unit, agency and subdivision of indebtedness of another or other and transfer of official personnel records, funds and other property and assets."
According to the provisions of this article, the people of the Parish of East Baton Rouge and of the City of Baton Rouge, established a city-parish form of government and the Parish of East Baton Rouge is governed by a parish council. The parish government re-arranged the wards of the parish and placed the original Ward Four, together with other wards that had been wet into a new ward, which is now known as Ward Two of the Parish of East Baton Rouge. This change went into effect on January 1, 1949, and plaintiff made his application for his permit on March 6, 1950, that is subsequent to the effective date of the new plan of government for the Parish of East Baton Rouge.
We have been unable to find in the section of the constitution as hereinabove referred to, neither have we been able to find any provision in the new plan of government for the Parish of East Baton Rouge, where the people of the original Ward Four of said parish lost or relinquished any of their rights as a result of the referendum election held in May 1937, declaring said ward dry. If the Police Jury or the City-Parish Charter Commission for the Parish of East Baton Rouge had intended that the people of the original Ward Four would lose any of their rights which they had established in the referendum of 1937, they certainly made no mention whatsoever of same in the proposed new charter and plan of government to be voted on by the people of East Baton Rouge. From the record, it appears that no election or referendum has been held in the former Ward Four of said parish or the new Ward Two of said parish, since the original referendum, which was held in 1937, on the question of intoxicating liquor. Therefore, if the people of Ward Four had any rights at all, they were not taken away from them by a direct election or referendum.
No cases by our own courts have been cited to answer the second question involved in this case and this court has found none. The question is Res Nova in this state, however, the question has arisen in other jurisdictions and the large majority thereof have adopted the equitable and fairer view that when two or more subdivisions are merged into one and one of the areas merged has previously established itself as a dry section, that it remains dry until a subsequent vote of the people, changes the action of the previous vote. In other words, each of the merged areas retains its position as either wet or dry until a new election is called. Corpus Juris Secundum in discussing the question states as follows: "Where a local option law is in force in an entire district, and a portion of the district is cut off and joined to other territory under a new name, law still remains operative through the part not thus severed, and also remains in force in the new district. The fact that additional territory is added to a subdivision of a state does not operate to change an area from `wet' to `dry' or vice versa as established in the original territory by an election, in the absence of another vote. It has been held that, where a new county is created in part from `dry' territory and in part from `wet' territory without any statutory provisions as to whether it shall be `wet' or `dry' until a local option election is held, the whole of such new county becomes subject to the license system until the voters shall vote the county `dry;' but, on the other hand, it has also been held that, if a *829 new subdivision of the state or county is formed out of part of a dry one and part of a wet one, the portion formerly dry remains so, and the portion formerly wet remains so." 48 C.J.S. Intoxicating Liquors, § 68, page 200.
Again in American Jurisprudence, we find the following discussion of this problem contained in the following language:
"Generally, the vote in a Local Option unit is binding on its entire territory in the absence of some statutory provision to the contrary. The adoption of local option, for instance, by a county or district as a whole, prohibits the sale of liquor in any of the cities, towns, villages, or subdivisions therein, except where the vote in any municipality or subdivision is, by statute, made to operate independently of the general vote. Likewise, when the unit has adopted prohibition, it remains in force until it is revoked by a vote of the adopting territory as a whole, unless the statute confers on some portion of the unit the right to revoke independently of the whole. However, a vote may be taken in a town, although a local option law has been adopted in a precinct including the town, where, since the local option law was adopted, the town has been made a new political subdivision with power to vote on the liquor question.
"Whenever a given territory has, in the manner provided by a statute become `dry', it seems that the continuance of the inhibition against the liquor traffic and against licensing it, is not effected by any change of boundary12 or by any change in the form of government of the territory affected. For example, it has been held that when the voters of a township, put prohibition into operation, its application to so much of the territory as is included in an incorporated town is not affected by it becoming a city.13 [Italics ours.]
"(Footnote 12. The severance of Local Option Territory for the purpose of forming new districts or re-organizing existing ones, does not affect the application of a local Option Law then in force, either to the severed territory or that remaining.) Anno: 21 Ann.Cas. 1015, s. Ann.Cas.1917C 512.)
"(Footnote 13. Smith v. Walker, 173 Ind. 239, 89 N.E. 862, 21 Ann.Cas. 1014; State ex rel. McKay v. Randall, 166 Wis. 573, 165 N.W. 301, citing R.C.L.)" American Jurisprudence 30, page 352, § 187, Intoxicating Liquors.
Among the cases cited by these authorities and which treats the problem at some length, is that of Houchinas v. Plainos, 130 Tex. 413, 110 S.W.2d 549, 551. In this Texas dispute the people of the City of Houston Heights, acting under authority of the Texas Constitution and various enabling statutes, voted that the area be dry. This election took place in 1912. In 1918, the incorporated City of Houston Heights was, by a vote of its people abolished and its territory annexed to that of Houston, Texas, which was in the language of the court a "wet" city. The question before the court in the Plainos case was stated by the court as follows: "Is the sale of intoxicating liquors now prohibited within the territory or area once comprising the territory or area of the now defunct or abolished City of Houston Heights, Texas?" After annexation of Houston Heights to the City of Houston, the Texas Constitution was amended in accordance with national prohibition, so as to make the entire state of Texas dry. In 1933, after repeal, the Constitution of Texas was again amended so as to authorize the sale of intoxicating liquor, but with the provision that "in all counties in the State of Texas and in all political subdivisions thereof, wherein the sale of intoxicating liquors had been prohibited by local option elections * * it shall continue to be unlawful * * * unless * * * a majority of the * * voters" vote otherwise. In the Plainos case, the Court stated as follows:
"As already shown, the city of Houston Heights, by a vote of its qualified electors was annexed to the wet city of Houston on February 20, 1918. Section 20 of article 16 of our Constitution, as amended in 1919, was adopted in May of such year. It thus appears that at the time the city of Houston Heights was abolished and its area annexed *830 to the city of Houston, section 20 of article 16, of our Constitution as adopted in 1891, was in effect. It was certainly then the law that the abolition of the corporate existence of the city of Houston Hights and the annexation of its territorial area to the then wet city of Houston did not in any way, affect the area originally comprised within the corporate limits of the city of Houston Heights as regards local option. In other words, it was certainly the law at the time the city of Houston Heights voted to dissolve its corporate existence and annex its territory to the wet city of Houston that when an area voted dry it remained dry * * * and the change, or even abolition, of the political or corporate entity which comprised such area did not alter this fact or rule of law. (Citing a number of Texas cases.)
"It is contended that the above authorities do not apply in this case, because they deal with political subdivisions of counties abolished or changed by commissioners' courts, while the present case deals with a city abolished by a vote of its qualified electors and annexed to a wet city in the same way. We think this contention is untenable * * *. When the people of Houston Heights voted to become a part of the wet city of Houston they did not vote on local option at all."
Plaintiff contends that this case has no special bearing on the case at bar in view of the fact of the provision in the Texas Constitution reserving to the counties in the State of Texas and in all political subdivisions thereof wherein the sale of intoxicating liquor had been prohibited by local option election * * * it still continued to be unlawful, unless a majority of the voters vote otherwise. The plaintiff might have some merit in that contention, but, nevertheless, we cite the above quotation for the reasoning therein found and for the additional purpose of bringing out the fact that when the people in Houston Heights voted to become a part of the wet City of Houston, they did not vote on local option at all. That same situation is true here in this case, because when the electors of Ward Four of the Parish of East Baton Rouge, voted to adopt the new plan of government for said parish, they likewise did not vote on a local option question, dealing with intoxicating liquors as that question was not presented, either in the constitutional provision of the State of Louisiana, or in the plan of government as submitted to them to be adopted. Counsel for the plaintiff cites as the only case which fits the case at bar and that is, Village of American Falls v. West, 26 Idaho 301, 142 P. 42. He contends that this is a suit to enjoin a saloon from operating on the grounds that it was a nuisance. The saloon was situated in Power County, which had been created from portions of Bingham, Cassia and Oneida Counties, theretofore dry, and a small portion with fewer people from Blaine County, previously wet. In this case, he quotes the conclusion of that court as follows: "When a new county is created by act of the Legislature, it becomes a wet county or a dry county in its entirety and not in spots. The Legislature has a right to say whether the new county will be wet or dry until an election takes place under the Local Option Law; but, if the Legislature fails to provide which it will be, then, under the general rule, it would be subject to the license system."
This defendant relies on the law as quoted by Corpus Juris Secundum and American Jurisprudence as cited supra, together with other cases found in other jurisdictions throughout the country, one of which is a case entitled Higgins v. State, 64 Md. 419, 1 A. 876, 878, wherein that court stated:
"In several of the counties of the state, the county commissioners are given the power of changing existing and laying out new election districts, as the public convenience may require; and in such case it could hardly be contended that prohibitory law, such as that in question here voted upon, and adopted by districts, would be repealed or defeated in its operation by any subsequent act of the county commissioners, in the mere changing of boundaries of an election district.
"The repeal by mere implication of a former by a subsequent statute is never favored by the courts, and it is only where *831 they are clearly irreconcilable, and not susceptible of any such fair interpretation as will allow of their standing together, that such repeal will be declared."
Defendant also cites the case of Wilkins v. State, 75 Fla. 483, 78 So. 523, 525. This was the case where the defendant was charged with having sold intoxicating liquors in a county which had voted against the sale of such liquors and where a new precinct was created, partly of a dry precinct and partly of a wet one. There the court stated as follows: "Where an election has been held to determine whether the sale of intoxicating liquors shall be prohibited in any county, that the status established by the votes of the people attaches to the territory, and if subsequently a new precinct is created, partly of a dry precinct and partly of a wet one, that the conditions which existed in the territory out of which the new precinct was created attached to the territory in the new precinct, and the portion of the precinct which formerly was part of a dry precinct remains dry, and the portion which formerly was a part of the wet precinct remains wet."
These cases seem to be in point with the question at issue and in the latter case, the Supreme Court of Florida cited another Florida case, entitled McGriff v. State, 66 Fla. 332, 63 So. 724, 725. In the McGriff case, the Supreme Court of the State of Florida stated as follows:
"The sole point presented for determination is whether or not what is known as a local option law is enforced in Seminole county. Chapter 6511 of the Laws of Florida (Acts of 1913, p. 365 [F.S.A. § 7.57]) created Seminole county out of certain designated portions of Orange county. It is shown by the transcript that a local option election had been held in Orange county prior to the formation of Seminole county therefrom, which resulted in the sale of intoxicating liquors being prohibited therein. It is contended by the plaintiff in error that, notwithstanding such election and result in Orange county, since no such election had ever been held or had in the new county of Seminole, the local option law was not in force therein, and therefore the plaintiff in error had been illegally convicted. This contention is not tenable. * *
"It is obvious that the county is made the unit for such an election, and, where the result of an election so held is against the sale of intoxicating liquors, such sale is prohibited through the entire territory. The formation of a new county from portions of such old county can not have the effect of nullifying such election and authorizing the sale of liquors in the county so framed. The authorities would seem to be practically uniform to that effect. See Higgins v. State, 64 Md. 419, 1 A. 876; Prestwood v. State, 88 Ala. 235, 7 So. 259; Moore v. State, 126 Ga. 414, 55 S.E. 327; Parker v. State, 126 Ga. 443, 55 S.E. 329; Amerker v. Taylor, 81 S.C. 163, 62 S.E. 7; Oxley v. Allen, 49 Tex.Civ.App. 90, 107 S.W. 945; Ex parte Pollard, 51 Tex.Cr.R. 488, 103 S.W. 878."
This case seems to be truly in point with the second question presented in this case and the Florida Supreme Court cites an Alabama case found in our Southern Reporter system, which is the case entitled Prestwood v. State, 88 Ala. 235, 7 So. 259, and the Supreme Court of the State of Alabama, stated as follows in that case:
"The act of February 28, 1881, (Acts 1880-81, p. 148) prohibits the sale, giving away, or otherwise disposing of any kind of spirituous, vinous, or malt liquors in `beat number two, known as "Fairfield Beat," in Covington County'. The effect was to establish prohibition as the law of the beat, with the boundaries and area as it was then construed. If the act had declared the boundaries of the beat it would not have been more definite or fixed in its operation as a rule of civil conduct. The description was certain, because perfectly capable of being rendered certain by record evidence.
"It necessarily follows that the commissioners' court had no right to suspend or limit the operation of the law by narrowing the area of the beat. If so, they might entirely repeal it, within their mere discretion, by abolishing the beat. The only power that could repeal or suspend the law was the one by which it had been established, *832 the general assembly,in which alone is vested the constitutional authority to make and unmake laws."
This case likewise appears to be in point with the question under discussion. The general law of this state as found in Act No. 57 of the Extra Session of 1877, as last amended, Dart's 6386, grants to Police Juries of each parish the right to redistrict their respective parishes into jury wards, "as the convenience of the people may require." Therefore, under the constitutional provision as found in Article 14, cited supra, and the general Police Jury law as established, the Governing Body of the Parish of East Baton Rouge had a perfect right to rearrange the wards in said parish, which they did in a new form and plan of government. This they did, however, without saying anything with reference to the local option question. It is hardly conceivable that the Legislature of the State of Louisiana would grant to the people of the various political subdivisions, a right by ballot to create dry territories and at the same time, vest in the Police Jury a right to wipe out this exercise of the ballot by the simple procedure of redistricting the parish. The redistricting of the ward lines for the Parish of East Baton Rouge was done without any mention whatsoever as to the local option question and we do not think that the Police Jury of a parish can take it upon itself and negative a vote on local option by exercising its right granted it by changing and rearranging ward lines. In a case of this kind, we do not think that a prohibitory law such as that in question here, voted upon and adopted by a ward can be repealed or defeated in its operation by any subsequent act of the governing authorities of the Parish of East Baton Rouge, by a simple change of boundaries of an election district or ward. We say this especially in view of the absence of any election held subsequent to the election might negative the special referendum of the original Ward Four in 1937, which then held declaring said ward "dry".
In view of the authorities herein cited and from the facts as related, we are of the opinion that the territory comprising the former Ward Four of the Parish of East Baton Rouge still remains dry, and that the Parish Council can not now grant a permit for the conduct of a business for the sale of intoxicating liquors in that area without violating Act No. 17 of the First Extra Session of 1935.
It is further our contention as stated in the case of State ex rel. Monk v. Police Jury of Vernon Parish, La.App., 3 So. 2d 186, that a Writ of Mandamus will only issue to compel a public official to perform a purely ministerial duty, a duty which a law or an ordinance in plain and unmistakable terms, requires him to perform as a part of and in connection with his official functions. We do not think that such is the case here and believe that the trial court was correct in its ruling in refusing to issue such a writ.
For the above and foregoing reasons, we believe that the Judgment of the lower court is correct and that same is hereby affirmed at appellant's cost.