184 So.2d 531

Joseph A. BLANCHARD

v.

Millard GAUTHIER.

No. 47970.

March 28, 1966.

Burton, Roberts & Ward, by John F. Ward, Jr., Baton Rouge, for defendant-appellant-relator.

R. Gordon Kean, Jr., Parish Atty., John V. Parker, Asst. Parish Atty., for intervenor-appellee-respondent.

McCALEB, Justice.

The question presented for decision is one of first impression in this Court—it is whether or not an area formerly constituted as a "dry ward" by a local option election retains such status following its reorganization and reincorporation as part of an-

other larger ward by vote of the people of the parish.

The litigation began when defendant, Millard Gauthier, applied to the State of Louisiana and the Parish of East Baton Rouge for permits for the calendar years of 1964 and 1965 to sell alcoholic beverages (beer) at retail in Ward Three of East Baton Rouge Parish within that part of the ward, formerly designated as the Tenth Ward, which was abolished in 1949 as a constituted unit of the political subdivision when the electors adopted a new form of City-Parish government for East Baton Rouge Parish pursuant to authority granted said parish by Article 14, Section 3(a) of the State Constitution.

Opposition to Gauthier's application was filed with the State Collector of Revenue and the Board of Tax Appeals by plaintiff, Joseph A. Blanchard, and thereafter a hearing on the opposition was scheduled before the Board of Tax Appeals in accordance with the provisions of R.S. 26:283. Meanwhile, an intervention was filed in the proceedings on behalf of East Baton Rouge Parish opposing the application. At the time of the hearing Blanchard made no appearance and has since abandoned his protest to the issuance of the permit sought by defendant. The contradictory proceedings were then conducted between the intervenor parish and the defendant applicant. Thereafter, the Board of Tax Appeals rendered an order dismissing the opposition whereup-

on intervenor appealed to the Nineteenth Judicial District Court for East Baton Rouge Parish. Pending the appeal, the State of Louisiana issued applicant a permit for the year 1964 and, subsequently, granted a license for 1965. A similar permit was declined by the parish for these calendar years.

On appeal to the district court, judgment was rendered vacating the order of the Board of Tax Appeals and the State and Parish were restrained and prohibited from issuing the requested permit to Gauthier, who appealed from this judgment to the Court of Appeal, First Circuit, where the judgment of the district court was affirmed. See Blanchard v. Gauthier, La.App., 178 So. 2d 385. Gauthier then applied to this Court for a writ of review which was granted and the case has been argued and submitted for our determination.

The salient facts are that, conformably with the provisions of the Local Option Law then in effect (Act 17 of the First Extraordinary Session of 1935), the Police Jury (the then governing body of East Baton Rouge Parish) conducted an election on December 7, 1937 in the Tenth Ward of the Parish, as it was then subdivided, for the purpose of determining whether the sale of intoxicating liquors in said ward was to be prohibited. The election carried and the ward was voted "dry" and remained so at least until 1949. In that year (as heretofore stated) the electors of East Baton

Rouge Parish, pursuant to the authority granted by Article 14, Section 3(a) of the State Constitution, voted to abolish the existing parish form of government by Police Jury elected from the ten wards and adopted a new form of City-Parish government whereby the parish was internally resubdivided by consolidating its former ten wards into three wards. Ward Ten became nonexistent as a separate political segment of the parish by its consolidation with other areas, which were "wet", and is now part of Ward Three of the parish.

It is the position of the intervenor parish that the area formerly constituting Ward Ten remains "dry", notwithstanding the dissolution of Ward Ten as an integral governmental unit, unless its status is changed by a vote of the people on this specific question and that, until a local option election is called in the entire area comprising Ward Three and carried in favor of the sale of alcoholic beverages, no permit may lawfully issue for the sale of the same in that portion of Ward Three which previously voted "dry" in 1937.

On the other hand, Gauthier asserts that, since the Tenth Ward no longer exists as a legally constituted subdivision of the parish, it cannot rightly be said that the area formerly constituting that ward is "dry" and that the change of government, which was adopted by the people of the parish in 1949, repealed by operation of law the local option previously voted within the former "dry" areas and produced the same effect as though a specific referendum had been submitted to the electors residing in such "dry" areas. In addition, counsel argue that, to maintain intervenor's position, a portion of the area now comprising Ward Three must forever remain "dry" as there is no legal method by which a local option election may be called for that portion of the present Ward Three which was once Ward Ten of the parish.[1]

In disposing of this issue, the Court of Appeal relied upon its previous decision in Hughes v. Parish Council (La.App. 48 So.2d 823, 25 A.L.R.2d 852), which presented the identical question with respect to the area formerly comprising Ward Four of East Baton Rouge Parish, and reiterated and reaffirmed the views therein expressed to the effect that, when an area, previously voted "dry" in a local option election, is annexed to or consolidated with another area which is "wet" because prohibition had not been adopted therein, that portion voted "dry" is bound by the vote and remains so, unless lawfully changed either by a vote of the

---

1. Gauthier also contended in the Court of Appeal, and this point is reurged here, that the 1937 local option election in Ward Ten presented only the question of prohibiting "intoxicating liquors" and did not cover the sale of "beer" as such beverage of low alcoholic content is not defined as an intoxicating liquor by the local option statute. Suffice it to say that the Court of Appeal correctly rejected this contention and we concur in the result it reached on that phase of the case.

people on this specific issue or by legislative act.

Counsel for Gauthier urge that the holding in the Hughes case be changed [2] forasmuch as the legislation dealing with local option laws, and particularly the provisions contained in Section 4 of Act 17 of the First Extraordinary Session of 1935 ("No election on any such question shall be held oftener than once a year.") indicates that the Legislature intended that the question of whether or not alcoholic or intoxicating liquors would be sold in a particular parish, ward or municipality should be a continuing one which the electors residing in the "wet" or "dry" area, as the case may be, would have an opportunity to correct from time to time. Counsel profess that the Hughes decision circumvents this legislative intent for the result is that the electors who reside in the geographical area, once known as Ward Ten, cannot now, under the local option law, have an election held within that geographical area to reverse the results of the 1937 election which must remain in effect presumably ad infinitum. It is further said that at the time the Hughes case was decided there was also jurisprudence in other states which supported the contrary view. See State v. Donovan, 61 Wash. 209, 112 P. 260 and Village of American Falls v. West, 26 Idaho 301, 142 P. 42.

■ An examination of encyclopedic texts (see 48 C.J.S. Intoxicating Liquors § 68, p. 200 and 30 Am.Jur. Intoxicating Liquors, Sec. 115, p. 601), wherein general statements of judicial pronouncements regarding the issue presented in this case are set forth, discloses that ordinarily the legal effect produced by a change in the boundaries or a reorganization of territory, in which a part has been previously voted "dry" under local option statutes, does not effect a repeal of a local option law in that part of the territory which was "dry" prior to the consolidation or reorganization. The statements of the general rule announced in C.J.S. and Am.Jur. are supported by decisions in eight states, namely, Florida, Georgia, Kentucky, Maryland, North Carolina, Ohio, South Carolina and Texas (the latter furnishing the great wealth of jurisprudence on the subject), it being recognized, however, that two states, Idaho and Washington (see Village of American Falls v. West, supra and State v. Donovan, supra) entertain a contrary view.

At first blush it may appear logical to deduce that a local option area, such as the former Ward Ten of the Parish of East Baton Rouge, would no longer be subject to local option after that ward is combined, consolidated and otherwise abolished as a

---

2. It does not appear that the Hughes case was brought to this Court on application for writ of certiorari. So, until the decision in the instant case, we have not had the opportunity of determining whether

or not the opinion in the Hughes case is correct and should be adopted as a precedent to be followed by all the courts of this State.

legal segment of a parish by a change in the form of government whereby the entire parish is reorganized by a vote of the people. Hence, we must look to the basis upon which the above stated general rule is premised in order to determine whether it is sound in principle and should be adopted and applied in this case.

In an annotation in 25 A.L.R.2d 863–877, which follows a report of the Hughes case, it is stated:

"Because the theory of local option laws is that the people of a political or governmental unit shall have the right to determine their status, and the correlative right to change it, according to the provisions of those laws, a status once adopted is usually considered to attach to the territory which was originally bound by the vote, and to remain operative, unless lawfully changed, notwithstanding changes for other purposes in the designation, boundaries, or organization of the unit."

▬ If it is proper to say that a *status* has been created by vote of the electors to make the territory "dry", then it would seem to follow that a vote of the entire electorate to change the form of govern-

ment whereby "dry" wards are consolidated and merged with "wet" wards does not effect a legal change in such status—unless it be, as claimed by counsel for Gauthier, that the dissolution of the "dry" ward as a legal unit of the parish government has substantially deprived the electors residing in former Ward Ten of their statutory right to have an election called within that area to determine whether it should remain "dry". It is true that, since the area formerly comprising Ward Ten is no longer a ward, it is impossible for the electors of that area to have another election called to determine whether the territory will remain "dry". However, the electors of the present Ward Three, which includes a "dry" territory, have unquestionably the right under the local option law to have the issue of prohibition voted on by all the electors of that ward. Hence, it is not correct to say that the status now existing in former Ward Ten cannot be changed by the people but only that the electors entitled to vote on such issue will include those electors residing outside the dry area in Ward Three as well as those residing within it.

Our research of authorities has disclosed that the vast majority of cases from other states [3] have followed the general rule and,

---

3. See Higgins v. State, 64 Md. 419, 1 A. 876; Prestwood v. State, 88 Ala. 235, 7 So. 259; Moore v. State, 126 Ga. 414, 55 S.E. 327; Parker v. State, 126 Ga. 443, 55 S.E. 329; Amerker v. Taylor, 81 S.C. 163, 62 S.E. 7; Oxley v. Allen, 49 Tex. Civ.App. 90, 107 S.W. 945; Houchins v. Plainos, 130 Tex. 413, 110 S.W.2d 549; Ex parte Pollard, 51 Tex.Cr.R. 488, 103 S.W. 878; McGriff v. State, 66 Fla. 332, 63 So. 724; Wilkins v. State, 75 Fla. 483, 78 So. 523 and many others too numerous to cite.

at this time, we perceive no valid reason for departing from this rule.

Counsel for Gauthier, nevertheless, would have us hold that this case is distinguishable because, in the other cases which adhere to the general rule, the county units involved were changed or abolished by Commissioner's Courts or Police Juries while, in the present case, the dissolution of the ten wards was made possible only by vote of the qualified electors of the parish.

After a careful consideration of the nature of the change in the instant case we do not believe that the difference in the methods employed to effect the change—whether by vote of the people or by statutes empowering Commissioners to consolidate and merge segments of counties—constitutes a sound footing on which a legal distinction between the two situations may be predicated. This is because in both instances the electors of the wards consolidated, dissolved and abolished do not have the exclusive right to determine whether the ward or "dry" territory should remain extant or not. For example, it was not the electors of Ward Ten alone who determined to adopt the new form of government and abolish

that ward; this was done by the entire electorate of the Parish.

Furthermore, in Houchins v. Plainos, 130 Tex. 413, 110 S.W.2d 549,[4] a case involving the merger of a "dry" suburban city with the "wet" city of Houston, in which the electors of the former had voted for the consolidation, the Supreme Court of Texas found that the vote for the merger did not change the status of the annexed territory as a "dry" area because the electors of the annexed territory had not in fact voted on local option but only on the issue of merger. So, too, here it cannot rightly be said that the electors of Ward Ten or the electors of the entire parish, for that matter, were presented with any issue as to whether the status of the "dry" areas within the parish would be changed to "wet" by the approval of the new form of government for the parish.

We conclude, therefore, that the Court of Appeal did not err in sustaining the judgment of the district court.

For the reasons assigned, the judgment of the Court of Appeal is affirmed at the cost of the defendant.

4. The Court of Appeal relied heavily on this decision in the Hughes case.