LANDRY, Judge.
This appeal presents for determination the question whether a permit may lawfully issue for the sale of alcoholic beverages (beer) within the confines of an area of a parish duly voted a “dry ward” and thereafter incorporated into a larger “wet ward” wherein the sale of alcoholic beverages has not been prohibited by local option election.
Defendant, Millard Gauthier, timely applied to the State of Louisiana, and the Parish of East Baton Rouge, for permits for the calendar years 1964 and 1965 to sell beverages of low alcoholic content, (less than six per cent (6%) alcohol by volume), at retail within a geographical area of East Baton Rouge Parish formerly designated as the Tenth Ward but now nonexistent as a political subdivision, because of its incorporation into and merger with a larger area of the parish presently denominated Ward Three, the entire parish presently consisting of only three wards.
Opposition to defendant’s said application was filed with the State Collector of Revenue and the Board of Tax Appeals, by plaintiff, Joseph A. Blanchard, in pursuance of which the permit sought was withheld by state and local authorities pending a hearing on the opposition before the Board of Tax Appeals in accordance with the provisions of LSA-R.S. 26:283. Intervention in the proceeding was filed on behalf of the Parish of East Baton Rouge (sometimes hereinafter referred to as “Parish” or “intervenor”), and the hearing before the Board of Tax Appeals was held November 19, 1964. Blanchard, the initial opponent, made no appearance at the hearing held November 19, 1964, nor has any appearance been made on his behalf in any subsequent proceeding herein. Accordingly, his opposition is presumed abandoned.
The Board of Tax Appeals rendered judgment November 23, 1964, dismissing intervenor’s opposition whereupon the Parish appealed to the Nineteenth Judicial District Court, East Baton Rottge Parish. Pending said appeal, the State of Louisiana issued applicant a permit for the year 1964. Subsequently, when defendant applied for a 1965 permit, the State granted the license but the Parish again declined.
*387 Our learned brother of the trial court rendered judgment vacating and setting aside the order of the Board of Tax Appeals, and restraining and prohibiting the Parish and State of Louisiana “from issuing a permit to appellee to sell beverages of low alcoholic content in the geographical area of Ward Three of the Parish of East Baton Rouge which formerly constituted the legal boundary of old Ward Ten of the Parish of East Baton Rouge.” From the foregoing judgment defendant-applicant, Gauthier, has taken this appeal.
The events and circumstances culminating in the present litigation are not in dispute; they appear of record by joint stipulation of counsel and reveal substantially the following occurrences: On December 7, 1937, pursuant to a petition of electors, the Police Jury (the then governing body of the Parish), conducted an election in the Tenth Ward of the Parish, (as said Parish was then subdivided), “for the purpose of settling the question, For or Against selling intoxicating liquors in said Wardsaid election being authorized pursuant to the provisions of Act 17 of the First Extraordinary Session of 1935. The promulgated return of the thusly held local option election disclosed the following expression of electoral opinion:
For liquor O t-h
Against liquor VO CO
Intervenor’s position, succinctly stated, is that the permit in question may not lawfully issue for the sale of alcoholic beverages in that portion of present Ward Three of East Baton Rouge Parish previously voted “dry” in 1937, until and unless a local option election shall have been called in said Ward Three and successfully carried in favor of the sale of alcoholic beverages within the presently constituted geographical confines of said ward.
Esteemed counsel for appellant-applicant maintains the trial court erred in: (1) holding the election of December 7, 1937, in former Ward Ten, is still in effect, notwithstanding the election held by the voters of East Baton Rouge Parish in 1949, pursuant to Article 14, Section 3(a) of the State Constitution, wherein the then existing form of government and political subdivision of the Parish were abolished, a new form of Parish government adopted and the Parish internally resubdivided by consolidating its former ten wards into three wards, and; alternatively, (2) concluding the election of December 7, 1937, called “for the purpose of settling the question, for or against selling intoxicating liquors in said Ward,” prohibited the sale of beer, a beverage of low alcoholic content containing less than six (6%) per cent alcohol by volume.
In maintaining the effects of the 1937 local option election held in former Ward Ten were nullified by the change in governmental structure and political resub-division of East Baton Rouge Parish voted by the electorate in 1949, wherein the Police Jury and Mayor-Municipal Council form of government was discarded in favor of a City-Parish Council presided over by a Mayor-President, and the ten wards of the parish were merged and consolidated into three wards, learned counsel for appellant advances several arguments. First, it is contended certain inequities have resulted from the reorganization and consolidation of parish wards and the tremendous subsequent population growth within the parish in general and the confines of former Ward Ten in particular. In this regard counsel points out that the area of former Ward Ten, which presently has a population of 5,000 residents, is effectively prevented from proposing reconsideration of the “wet” or “dry” status of its geographical limits imposed in an election in which only 296 electors participated twenty-eight years ago. Counsel acknowledges the present statute authorizes the conduct of a new local option election in Ward Three as presently constituted, which includes old Ward Ten together with the considerable additional area merged therewith, but points out that the residents of the former Tenth *388 Ward can no longer reconsider the pertinent issue insofar as it affects the geographical limits of former Ward Ten alone. With this conclusion we are in complete accord considering LSA-R.S. 26:582 prohibits the holding of a local option election on a parish-wide basis or for any political subdivision other than a ward or incorporated municipality. See also State ex rel. Vullo v. Plaquemines Parish Police Jury 238 La. 328, 115 So.2d 368. As further pointed out by counsel for appellant, the practical effect of this condition of the law is that if the electors of the former Tenth Ward area desire to have the question reconsidered, they must enlist the aid of persons outside the area heretofore comprising the Tenth Ward who are willing to have the “wet” or “dry” status determined as an initial question in those areas of the present Third Ward not included in what was formerly Ward Ten. While such circumstances may pose problems to those electors of the area in question wishing to obtain another expression of public opinion on the subject matter under discussion, the difficulties thus encountered are matters which address themselves solely to the discretion of the legislature which alone has the power and authority to determine and prescribe the conditions governing the calling of local option elections.
Secondly, it is contended the local option election held in 1937 pursuant to the 1935 statute, should be considered null and of no further effect, because the reorganization of the parish resulting in the adoption of a new plan of government accompanied by political re-subdivision was accomplished by parishwide election held in 1949 in accordance with special constitutional authority. Finally, it is argued no law can exist in an area which no longer constitutes a political or legal entity apart from the general law applicable to the political subdivision of which the former geographical area has become a part.
It suffices to say all the foregoing contentions were disposed of by our previous decision in Hughes v. Parish Council, 48 So.2d 823, 25 A.L.R.2d 852, which involved a similar question in the territory formerly comprising Ward Four, East Baton Rouge Parish, wherein the electors voted “dry” in a comparable election prior to said Ward Four being incorporated in present Ward Two.
Counsel for appellant urges our reconsideration of the Hughes case, supra, with the view of reversing or modifying the principles therein set forth. Our careful reconsideration of the cited authority only serves to convince us of the soundness of the jurisprudence therein established. We note further the fundamental issues therein concerned were thoroughly discussed and what proved to be a res nova question quoad our own jurisprudence was resolved in accordance with the established majority rule of other jurisdictions. We further note the Hughes case, supra, has been reported in American Law Reports, Annotated, Second Series, followed by an annotation from which we quote the following appearing at A.L.R.2d 864:
“§ 2. General rules and observations; summary.
Because the theory of local option laws is that the people of a political or governmental unit shall have the right to determine their status, and the correlative right to change it, according to the provisions of those laws, a status once adopted is usually considered to attach to the territory which was originally bound by the vote, and to remain operative, unless lawfully changed, notwithstanding changes for other purposes in the designation, boundaries, or organization of the unit.
It has, therefore, become a general rule that a designation, division, reassignment, reorganization, increase, diminishment, or abolition of a political or governmental unit, the people of which by election have adopted a local option status, does not affect the oper *389 ation of a local option law in any of the territory originally bound by the election.”
We herein reiterate and reaffirm the views expressed in the Hughes case, supra, considering they accord with the prevailing general rule on the subject matter in question.
We shall now address our remarks to appellant’s remaining contention, namely, that the question presented to the electors in the local option election of 1937, involved only a vote with respect to beverages of high alcoholic content, (“whiskey or hard liquor”), consequently the sale of beverages of low alcoholic content, including beer, was not encompassed in the election. On this basis, it is argued the election in question did not prohibit the sale of beer but so-called “hard liquor” alone, therefore applicant is entitled to a permit to sell beer in the area.
The aforesaid local option election of 1937, was held in conformity with Act 17 of the First Extraordinary Session of 1935, the pertinent portion of which reads as follows:
“Section 1. Be it enacted by the Legislature of Louisiana that, if any parish, ward or municipality at an election held for the purpose, which shall be conducted as nearly as possible in accordance with the election laws of the State, shall, by a majority vote of its duly qualified electors voting at any such election, determine that the business of producing, manufacturing, rectifying, blending or handling, selling, using, distributing, storing or consuming of alcoholic or intoxicating liquors as defined in section 2 of this Act, otherwise than when prescribed by a licensed physician as a medicine, in such parish, ward or municipality shall not be licensed or permitted therein, such business shall not be therein licensed or permitted.
“Section 2. That the words 'alcoholic or intoxicating liquors,’ as used in this Act, shall be deemed and held to include :
“(a) Beer, porter, ale, fruit juices, wine or other alcoholic liquors of an alcoholic content greater than one-half of one (1%) per centum of alcohol by volume but not exceeding six (6%) per centum of alcohol by volume;
“(b) Malt, vinous, spirituous, alcoholic, or intoxicating liquors containing more than six (6%) per centum of alcohol by volume.
That at any election held under the authority of this Act propositions in respect to the traffic in all such liquors defined in the above paragraphs (a) and (b) of this section, or in respect to either those defined in paragraph (a) or those defined in paragraph (b), may be submitted to the electors. Provided that this Act shall not authorize the prohibition of the sale of such liquors when prescribed by a licensed physician as a medicine. Where it is contended in any prosecution for the violation of any law of this State or any ordinance enacted pursuant to the authority of this act that any such liquors were prescribed and sold as a medicine, it shall be for the court to decide whether such prescription and sale were made in good faith and in case of sickness, or as a mere subterfuge and with intent to evade the provisions of such laws or ordinances.”
According to the second paragraph of Section 2 of the hereinabove quoted parts of the applicable law, it is clear that in calling a local option election the question of prohibiting the sale of either those alcoholic or intoxicating beverages defined in Section 2(a) or (b), or both, may he submitted to the electorate. Able counsel for defendant-appellant points out that the election in question was called “for the purpose of settling the question, For or Against selling intoxicating liquors in said Ward.” Counsel also notes the provision of Section 1 of the act to the effect the prohibition *390 against licensing therein mentioned refers to “alcoholic or intoxicating liquors as defined in Section 2,” and the terms of Section 2 containing definitions based on alcoholic content and permitting local option elections as to either or both classes of beverages defined in Section 2(a) and (b). Next counsel maintains the terms “alcoholic or intoxicating liquors” are disjunctive, not conjunctive, therefore, since the term “intoxicating liquor” is not used in Section 2(a) which defines beer as a beverage of low alcoholic content, submission to the voters of Ward Ten of the issue of prohibition of the sale of “intoxicating liquors” did not include beer, a beverage of low alcoholic content. According to esteemed counsel for appellant, submission of the question of prohibiting the sale of beer or beverages of low alcoholic content could have been acomplished only by the call of an election to prohibt the sale of “alcoholic liquors,” “beer,” or other terms used in Section 2(a) which according to counsel, defines beverages of low alcoholic content as expressly differentiated from intoxicating liquors or beverages of high alcoholic content.
Counsel for defendant-appellant traces the legislative history of our local option election statutes pointing out that prior to the act of 1935, such elections were governed by separate statute — one dealing with beer, porter, ale and other beverages of low alcoholic content, and the other dealing with beverages containing more than six (6%) per cent alcohol by volume. In this regard counsel states:
“Therefore, immediately prior to Act 17 of 1935, in order to call an election for the prohibition of both beer and other beverages of less than six (6%) per cent alcohol by volume on the one hand and intoxicating liquors and other beverages containing more than six (6%) per cent alcohol by volume, on the other, it was necessary to call the election under two separate acts of the legislature adopted in two separate years. Apparently the legislature, by passage of Act 17 of 1935 intended to bring the regulation of both types of beverages containing alcohol under one act and at the same time, provide for the calling of a local option election as to either type of beverage while maintaining the same definition of each type, that is, beer, porter, ale, etc. of an alcoholic content less than six (6%) per cent alcohol by volume on the one hand and malt, vinous, spiritous, alcoholic or intoxicating liquors containing more than six (6%) per cent alcohol by volume, on the other. This same distinction is carried through in subsequent acts of the legislature including Act 148 of 1940, 202 of 1940, 329 of 1942, 203 of 1944, 214 of 1944, 190 of 1946, 8 of 1948 and 372 of 1948 as well as the present law which is contained in Title 26 of the Louisiana Revised Statutes as Section 581 et seq. and Section 241. The only difference between the present law and the law that existed in 1935 when this election was called is that the statutes now refer to ‘beverages of low alcoholic content’ and ‘beverages of high alcoholic content’. Beer is, of course, considered as a ‘beverage of low alcoholic content’ which is by definition in LRS 26:241 an alcoholic beverage containing less than six (6%) per cent alcohol by volume.”
Careful consideration of Section 2, Act 17 of the First Extraordinary Session of 1935, leads to the conclusion that by employing the term “alcoholic or intoxicating liquors” the legislature intended “alcoholic liquors” and “intoxicating liquors” to be synonymous, interchangable, and indicative of one and the same thing, namely, any beverage containing more than one-half of one (1%) per cent alcohol by volume. In addition the legislature then proceeded to classify all such beverages into two separate categories, that is, alcoholic or intoxicating beverages of less than six (6%) per cent alcohol by volume and alcoholic or intoxicating beverages of more than six (6%) per cent alcohol by *391 volume for the purpose of permitting the electorate to vote upon the proposition of permitting or prohibiting the sale of either or both classes of such beverages in certain political subdivisions of the state. Therefore, when the election in question was held “for the purpose of settling the question, For or Against selling intoxicating liquors” in the Tenth Ward, it included all beverages falling within the term “intoxicating liquors” as used in the act which includes beer since beer is therein described within the category of intoxicating liquor having more than one-half of one (1%) per cent but less than six (6%) per cent alcohol by volume.
While the act expressly permits the electorate to vote on the question of allowing or banning the sale of either or both categories of alcoholic or intoxicating beverages as defined in the statute, the election involved in the case at bar employed the term “intoxicating liquors” without differentiating the classifications thereof. Under such circumstances it must be presumed both categories were intended since the generic term “intoxicating liqours” includes both classifications unless otherwise differentiated by reference to the percentage of alcoholic content thereof.
We do not find Pennix v. Webster Parish Police Jury, 188 La. 902, 178 So. 390, decisive of the case at bar as contended by illustrious counsel for appellant. The cited authority involved an election allegedly invalid by virtue of failure to comply with the provisions of Act 17 of the First Extraordinary Session of 1935. The precise issue raised was that the local option election held was null and void because the electorate was therein given the choice of voting for or against “licensing and permitting the business of selling alcoholic and intoxicating liquors.” It was argued such did not accord with the act because to submit to the electorate the proposition of voting upon the different kinds of liquors defined in Section 2(a) and (b), the issues must be presented under two separate headings just as the definitions appear in the act. The Pennix case 'is readily distinguishable from the case at hand on the ground no contention is made herein that the ordinance calling the election or the election itself is void for failure to comply with the applicable statute. Appellant herein contends merely that the election though valid, applies only to “intoxicating liquors” as defined in Section 2(b) of the applicable statute and does not include beer which is merely an “alcoholic liquor” distinguishable as such from an “intoxicating liquor” by the definition contained in Section 2(a) of the pertinent legislation.
In substance, the Pennix case, supra, held the words “alcoholic and intoxicating liquors” was broad enough to encompass “alcoholic or intoxicating liquors” of every kind and description mentioned in Section 2(a) and (b) of the Act. There appears no reason, therefore, to conclude that use of the words “intoxicating liquors” which the legislature deemed synonymous with “alcoholic liquors” does not likewise include both classes of “intoxicating liquors” as defined in Sections 2(a) and (b) unless the election call and ballot are so worded as to clearly indicate the classes of intoxicants are to be voted upon separately. The act does not require that the different classes of intoxicating beverages shall be voted upon separately, merely that they may be so presented to the electorate.
In urging adoption of the premise that “alcoholic liquors” and “intoxicating liquors” have entirely different connotations as used in the pertinent statute, counsel for appellant cites and relies upon State v. Viator, 229 La. 882, 87 So.2d 115, and State v. Guimbellot, 232 La. 1043, 95 So.2d 650, both of which held “beer” is not an “intoxicating liquor.”
The Viator case, supra, was a criminal prosecution for the alleged sale of “intoxicating or spirituous liquor” to a person under the age of 21 years in violation of LSA-R.S. 14:91. The Guimbellot case, supra, was also a criminal matter involving the alleged violation of a Sunday Closing *392 Law prohibiting the sale of “intoxicating liquors” on the Sabbath. In each instance the Supreme Court held “beer” was not an intoxicating liquor” within the meaning of the term “intoxicating liquor” as defined in the applicable law, namely, LSA~ R.S. 14:91 in the former case and LSA-R.S. 51:191 in the latter. These cases obviously have no application to the case at bar inasmuch as they concern the meaning of the term “intoxicating liquor” as defined in statutes different from and enacted subsequent to the law applicable to the instant case. It is significant that in the case at hand the applicable statute Act 17 of the First Extra Session of 1935, contains its own definition of “intoxicating liquors” which we have hereinbefore shown to be synonymous with “alcoholic beverages.”
Accordingly, the judgment of the trial court is affirmed at appellant’s cost.
Affirmed.