727 So.2d 545 (1998)
Jerry Wayne KING d/b/a Longwood General Store & Truck Stop, Plaintiff-Appellant,
v.
CADDO PARISH COMMISSION, Defendant-Appellee.
No. 31,098-CA.
Court of Appeal of Louisiana, Second Circuit.
December 22, 1998.
*546 Hal V. Lyons, Shreveport, Counsel for Appellant.
Office of the Parish Attorney by Dannye W. Malone, Counsel for Appellee.
Before MARVIN, C.J., and NORRIS, BROWN, WILLIAMS and CARAWAY, JJ.
MARVIN, C.J.
In this action to construe the local option law [La. R.S. 26:581-596], the owner of a truck stop in Longwood, a community northwest of Shreveport, and since 1984, located in Election District One of Caddo Parish, appeals a judgment rejecting his demands for a declaratory judgment against the Parish Commission decreeing that amendments to the local option law, effective August 15, 1997, render the election district "wet," making the truck stop eligible for a parish liquor license.
The trial court concluded that the law is ambiguous. Our review of the local option law from 1968 through 1997 on reargument causes us to respectfully disagree and to reverse and render judgment for plaintiff.[1]

DISCUSSION
Before 1984, Caddo Parish elected its governing body [police jurors] in wards. In 1984, Caddo Parish restructured itself into larger election districts, some of which include all or part of several of the old wards, for the purpose of electing members of the parish governing body called the Caddo Parish Commission.
The former police jury election district surrounding plaintiffs truck stop, old ward three, had voted "dry" in a local option election held before 1984. In 1984, ward three was combined with other territories, municipalities, and other wards, some of which were "wet," to create Election District One.
The issue is whether the 1997 law allows the "dry" status of old ward three [determined in a local option election before the restructuring of the parish governing body] to continue after old ward three is encompassed in a larger election district, at least until a local option election is held in the larger election district. This appeal is not concerned with the wet or dry local option status of an incorporated municipality. We omit "municipality" in quoting the statute.
After defining election district and authorizing election districts to conduct a local option election, the 1997 law [Act 330] declares in La. R.S. 26:583:
A. When a portion of a ward, [or] election district, ... is annexed or made a part of another ward, [or] election district, ... the portion annexed or made a part of shall take on the legal sales characteristics, as provided in this Chapter, of the ward, [or] election district, ... to which it is annexed or made a part of.

B. The provisions of this Section shall be applicable to any election previously called under this Title or any other local option law and to any territory covered by such election which has subsequently been merged with another ward, [or] election district, ... or portion thereof or whose boundary has been changed, it being the intention of this Chapter that the sale of beverages covered by this Title be permitted or prohibited only in an entire ward, [or] election district, ... and not in any portion thereof.
C. Notwithstanding the provisions of Subsections A and B of this Section, any package house in existence and operating as such on August 15, 1995, in an area that is subsequently annexed into a ward, election *547 district, municipality, or city-parish government that prohibits the sale of alcoholic beverages shall be allowed to continue operation and shall not be subject to the provisions of Subsections A and B of this Section.
(Our emphasis.)
As is shown by the attached exhibits, the language in the 1997 law first appeared in 1968 and has since been continued in several reenactments with later amendments.

Posture
After the 1997 amendments to the local option law, plaintiff applied to the Commission for a permit to sell liquor, relying on an October 1997 Attorney General's opinion agreeing with plaintiff's interpretation of the law. The Commission denied the application. The Attorney General's suggestion that the 1997 changes in the law might be resolved in an action for declaratory judgment apparently provoked plaintiff's action. See Opinion 97-438 attached as an unpublished appendix.
An Attorney General's opinion is only persuasive, but is not law and does not control judicial interpretation of a statute. Kidd v. Board of Trustees, 294 So.2d 265, 269 (La.App. 1st Cir.1974), writ denied.
We shall discuss the present state of the local option law following repeal of prohibition in 1933 in light of some of the many amendments thereto in the last three decades. We are mindful that the local option law is a special regulatory statute and standards of interpretation have been set by the legislature. La. R.S. 1:1-12.
While the privilege of regulating traffic in alcoholic beverages may be delegated to a political subdivision by the State, the State does not thereby surrender its power or right to alter or recall the delegated power. A political subdivision that exercises such delegated authority can never obtain "vested rights" in the enforcement of a local option ordinance. Froeba v. State, Dept. of Public Safety, 369 So.2d 727 (La.App. 3d Cir.1979), writ denied, citing and quoting State v. Sissons, 292 So.2d 523 (La.1974).

Continuity of the Law
After prohibition ended in 1933 Louisiana initially permitted parishes, as well as municipalities, to conduct local option elections. Slightly more than a decade later state law permitted local option elections only in wards and municipalities. This change in state law rendered unenforceable parish ordinances that had been enacted in response to a "dry" vote in a then parish-wide local option election. See Sissons, supra; State v. Wright, 305 So.2d 406 (La.1974).
At this juncture we place in context Blanchard v. Gauthier, 248 La. 1107, 184 So.2d 531 (La.1966), mentioned in the appended attorney general's opinion 97-438. That case arose after East Baton Rouge Parish changed its parochial structure from a police jury elected in wards to a city-parish governing body elected in fewer wards. A former "dry" ward was abolished and became a part of a new and larger ward, with some other wards or territory of the new ward being "wet." Citing C.J.S. and cases from other states apparently because no Louisiana statute or authority had resolved the issue, the court held that the old "dry" ward nonetheless retained its identity as a dry area until such time as a local option election was held in the new ward.
The next session of the legislature obviously resolved the issue within some parishes of Louisiana by enacting Act 208 of 1968, the local option law, attached as unpublished Appendix B, "relative to the effect of local option elections in wards and incorporated municipalities, or portions thereof, whose boundaries are changed or which have been merged with other wards, incorporated municipalities, or portions thereof." Preamble. [Our emphasis.]
The 1968 law in § 582.1, subsections one and two, reads much like the 1997 law mentioned above: The old ward, portion thereof, or "any territory" that is made a part of a new ward "shall take on the legal sales characteristics [wet or dry]" of "the ward, ... or city-parish government to which it is ... made a part of...."
The 1968 law also first stated the "intent" that continues in the 1997 law:

*548 Section 2. The provisions of R.S. 26:582.1 shall be applicable to any election previously called under Title 26 or any other local option law and to any territory covered by such election which has subsequently been merged with another ward, incorporated municipality or portion thereof or whose boundary has been changed, it being the intention of this act that the sale of beverages covered by chapter* 26 be permitted or prohibited only in an entire ward or incorporated municipality and not in any portion thereof.

* As it appears in the enrolled bill.
(Our emphasis.)
See Appendix A.
The 1968 law, however, initially applied to only wards, municipalities and city-parish government entities with a population over 100,000. Smaller parishes were not affected until the population limitation was deleted by Act 472 of 1982. Compare, e.g., Davis v. Caldwell Parish Police Jury, 331 So.2d 872 (La.App. 2d Cir.1976), writ denied.
In the 1970's, some parishes began to redistrict or restructure themselves by population to comply with the federal one man-one vote mandate. Act 472 of 1982 deleted the 100,000 population restriction, while re-enacting the local option law and effectively making Act 208 of 1968 apply to all wards, municipalities, and city-parish governments and, again, to "any election previously called under this Title or any other local option law." That Act is summarized in unpublished Appendix B.
Title 26 was re-enacted and amended in other parts by Act 696 of 1987 with no change in the local option election law sections under consideration here.

Act 330 of 1997
By this 1997 act the Legislature re-enacted and amended the local option law ["to authorize such elections to be held in election districts as well as in wards or municipalities"] in response to the fact that many parishes had restructured themselves by population. Some parishes, after restructuring, continued to elect either police jurors or parish commissioners in newly structured wards. Others elected police jurors or parish commissioners in voting districts or election districts.
Madison parish, for example, restructured itself in the 1970's by population from eight wards into eight voting districts in four wards, without formally abolishing the eight former wards. See Stephens v. Madison Parish Police Jury, 463 So.2d 609 (La. App.2d Cir. 1984). There we negated the validity of a local option election held in old ward eight in 1982. We noted that after restructuring, old ward eight became "encompassed" within a larger area, designated as Ward 3, Voting District 2-A. On rehearing, we noted that an old ward might continue to have some political function after restructuring, but reinstated the opinion's declaration that negated the 1982 local option election in old ward eight.[2]

Election District Defined
Act 330 of 1997, including its preamble, specifically authorizes local option elections either in an election district or a ward and defines an election district as:
a district from which a parochial officer is elected but ... does not include a district located entirely within an incorporated municipality.
Sec. 581 (2).
This definition retains the law's policy that, in recent decades, has allowed a political subdivision such as a ward and now, an election district, "from which a parochial officer [police juror] is elected" to vote wet or dry in a local option, "but does not include a district located entirely within an incorporated municipality" [in which case the wet or dry status of the municipality would control the election district, whether it be called by that name or called a ward], within the municipality.
The Election Code defines ward [a police jury ward and in parishes having no police *549 jury the subdivision of the parish equivalent to a police jury ward] and voting district [a parish governing authority district]. § 2(4) and (6), respectively.
With election district being defined and both terms [ward and election district] being continued in the local option law, the controlling term in this appeal from Caddo Parish [as restructured] is election district, while in the case of a parish that continues to elect its governing body from wards [even though restructured], the controlling term in the local option law would be ward. In this context, the statute is not ambiguous in declaring that the entity that chooses a member of the parish governing body that is made a part of another ward or election district "shall take on the [wet or dry] characteristics... of [either] the ward [or] election district [as the case may be] ... to which it is ... made a part of." Likewise, the statute is not ambiguous, but corroborates this conclusion by continuing to declare its intent "that the sale of [alcoholic] beverages covered by this Title [the local option law] be permitted or prohibited only in an entire ward [or] election district [as the case may be]. ..." § 583.
A restructured or newly created ward, or election district, respectively, as the case may be, is "wet" until a local option election produces a dry vote and resulting ordinance in the respective entity. An ordinance prohibiting the sale of liquor without the predicate local option election is of no force and effect. See Froeba v. State, Dept. of Public Safety, Office of Alcoholic Beverage Control, supra; Tolar v. State, 315 So.2d 22 (La.1975); Patrick's Cafe, Inc. v. Red River Parish Police Jury, 315 So.2d 27 (La.1975).
After the 1968 amendments to the local option law [initially applicable to parishes of more than 100,000 people] through re-enactments and amendments beginning in 1982 through 1997 [applicable in all parishes], the law applied here has not been found ambiguous in any reported case called to our attention. We do not declare it ambiguous here. We construe it "fairly," rather than either "liberally," or "narrowly."
Any part or "any territory" that is "made a part of a [parish governing body district] "shall take on the legal sales characteristics, as provided in [the local option law] of the [district] to which it is annexed or made a part of ... it being the intention of this Chapter that the sale of [alcoholic] beverages be permitted or prohibited only in an entire ward [or] election district...." The law applies to "any election previously held under" Title 26. Former § 583 A and B, Act 472 of 1982, Act 596 of 1987. See § 583 A and B, Act 330 of 1997, summarized in unpublished Appendix C.
The local option law, as amended is not ambiguous. Recognizing our judicial obligation, we apply it as written.

DECREE
The judgment appealed is reversed and judgment is hereby rendered in favor of plaintiff-appellant decreeing that the local option election held in old Ward Three of Caddo Parish, and resulting prohibition ordinance for old Ward Three, before the parish was restructured into election districts, have been negated by the restructuring and the 1997 re-enactment and amendments of the local option law, La. R.S. 26:581, et seq.
If court costs are awarded against a political subdivision, such costs shall be expressed in a dollar amount in a judgment of the trial court or decree of the appellate court. La. R.S. 13:5112. In assessing court costs against appellant, the trial court failed to comply with this statutory provision. We assess appellate costs of $115.50 to appellee and remand the case to the trial court to allow court costs below to be assessed in compliance with the statute to appellee.
REVERSED, RENDERED and REMANDED.
WILLIAMS, J., dissents, with written reasons.
CARAWAY, J., dissents for the reasons assigned by WILLIAMS, J.
WILLIAMS, J., dissenting.
The starting point for the interpretation of any law is the language of the statute itself. Touchard v. Williams, 617 So.2d 885 (La. *550 1993). In general, laws are to be construed as a whole and each part must be given effect where such a result can be reasonably achieved. Words used in a statute should be given their ordinary and usual significance. Helling v. Webster Parish, 523 So.2d 904 (La.App. 2d Cir.1988). The function of statutory interpretation and the construction to be given legislative acts rests with the judicial branch of government. Touchard v. Williams, supra.
The statutes which control local option elections concerning the sale of alcoholic beverages are contained in LSA-R.S. 26:581 et seq. This law has undergone numerous revisions, and the interplay and effect of the statutes as a whole are often difficult to perceive. We must examine the language of R.S. 26:583 as it applies to the parish ordinance prohibiting liquor sales in Ward Three.
Subsection 583(B) states that the provisions of the statute shall be applicable to "any territory" where a previous election has occurred, and which has subsequently "been merged" with another ward, election district or portion thereof, or whose boundary has been changed. Pursuant to the express terms of subsection 583(B), a ward which has held a local option election shall take on the sales characteristics of another political subdivision with which it has been merged.
A local option election prohibiting the sale of alcoholic beverages has been held in Ward Three. Thus, the issue before this court is whether the territory of Ward Three has been "merged" with Commission Election District One, where liquor sales have not been prohibited, so as to change the dry status of the ward. The term merger is defined as the fusion or absorption of one thing into another, such that the thing merged ceases to have an independent existence. Black's Law Dictionary 988 (6th ed.1990).
In interpreting Section 583, the majority impliedly concludes that once a parish draws election district lines, the prior valid local option election held in an included ward is negated, and the residents of that ward are precluded from subsequently voting to prohibit alcohol sales. However, the language of Section 583 does not provide for such a result. In addition, the majority's conclusion is contrary to the express terms of LSA-R.S. 26:582, which provides that upon the petition of 25% of the qualified electors residing in any ward, election district or any municipality, the governing authority shall order a referendum election. Although the majority's statement, that parish election districts are controlling once drawn, may make sense as policy, Section 583 as written does not provide authority for changing the dry status of a ward unless its boundaries have been changed or it has been merged.
In Stephens v. Madison Parish Police Jury, 463 So.2d 609 (La.App. 2d Cir.1984), this court stated that an old ward had been abolished by the police jury's action of reducing the number of wards and changing the ward lines, so that the original Ward Eight no longer served any political purpose. Citing Stephens, supra, Attorney General Opinion 94-344 states that absent parish police jury or commission action abolishing the old wards, these political subdivisions retain some function.
Here, the record does not contain evidence to establish that Ward Three has ceased to serve a political purpose, that the ward has been abolished by action of the parish commission, or that its boundary has changed. Based upon these circumstances, Ward Three continues to have an independent existence and thus has not been "merged" with the election district. Consequently, the provisions of Section 583 are not applicable to alter the dry status of the ward.
This interpretation is consistent with the statute's expressed desire to achieve a generally uniform treatment of liquor sales throughout a ward or election district, except for certain permit holders described in subsection 583(C), and is consistent with this court's prior recognition that the statutory scheme of Title 26 as a whole reflects the longstanding deference given by the legislature to the voters in deciding whether the sale of alcoholic beverages should be licensed and conducted in their locality. See O'Neal v. Jackson Parish Police Jury, 27,452 (La. App.2d Cir.6/21/95), 658 So.2d 240.
*551 In addition, the preamble to Acts 1997, No. 330, states that the law's purpose was to amend Title 26, including Section 583, relative to local option elections concerning alcoholic beverages and to authorize such elections to be held in election districts as well as in wards and municipalities. This language indicates that the law intended to recognize election districts as an additional geographical area in which local option elections may be held, and not to exclude ward based voting or repeal prior election results, except in situations of merger.
Considering the local option election provisions as a whole, I cannot agree with the majority's conclusion that creation of election districts, without some change to the ward itself, constitutes the merger required under the law. After reviewing the statutory language and the jurisprudence, I must conclude that in these circumstances, Section 583 is not applicable to alter the dry status of Ward Three. Consequently, the ordinance prohibiting the sale of alcoholic beverages in that ward is valid and the district court's judgment should be affirmed.
Therefore, I respectfully dissent.
NOTES
[1] Reargued before a five-judge panel as mandated by LSA-Const. art. 5, § 8(B).
[2] Compare definitions of ward and voting district in the Election Code, La. R.S. 18:2, with the definition of election district in the local option law, La. R.S. 26:581(2). Some Justices of the Peace and Constables continue to be elected from wards. LSA-Const. art. 5, § 20; Miller v. Oubre, 96-2022 (La.10/15/96), 682 So.2d 231, 236.