# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-78 consolidated with 04-79 & 04-80

### SABINE PARISH POLICE JURY

### VERSUS

### COMMISSIONER OF ALCOHOL & TOBACCO CONTROL

**********

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 56,087 C/W 56,109 & 56,655
HONORABLE STEPHEN BRUCE BEASLEY, DISTRICT JUDGE

**********

### ULYSSES GENE THIBODEAUX
### CHIEF JUDGE
**********

Court composed of Ulysses Gene Thibodeaux, C.J., Glenn B. Gremillion, and John B. Scofield[*], Judges.

**SCOFIELD, J., DISSENTS AND ASSIGNS WRITTEN REASONS.**


                                                    **AFFIRMED.**

**Honorable Don M. Burkett**
**District Attorney**
**P. O. Box 1557**
**Many, LA 71449**
**Telephone: (318) 256-6246**
**COUNSEL FOR:**
        **Plaintiff/Appellant - Sabine Parish Police Jury**

**Donald G. Kelly**
**KELLY, TOWNSEND & THOMAS**
**P. O. Box 756**
**Natchitoches, LA 71458-0756**
**Telephone: (318) 352-2353**
**COUNSEL FOR:**
        **Defendant/Appellee - Sabine Manufacturing, Inc.**

---

[*]Honorable John B. Scofield participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

**Celia R. Cangelosi**
**P. O. Box 3036**
**918 Government Street - Suite 101**
**Baton Rouge, LA 70821**
**Telephone:  (225) 387-0511**
**COUNSEL FOR:**
      **Defendant/Appellee - Commissioner of Alcohol & Tobacco Control**

THIBODEAUX, Chief Judge.

The dispute in these three consolidated cases involves whether a certain portion of Sabine Parish can sell alcoholic beverages. The Sabine Parish Police Jury (Police Jury) appeals the judgment of the trial court finding that Ward 3 of Sabine Parish, was merged with Election District 6 of Sabine Parish when election districts were created in that parish, resulting in Ward 3's prohibition of the sale of alcohol to be without effect. For the following reasons, we affirm the judgment of the trial court.

I.

**ISSUE**

The issue in this case is whether, pursuant to La.R.S. 26:583, Ward 3 of Sabine Parish, which prohibits the sale of alcoholic beverages, has been merged into Election District 6, which does not prohibit such sales, when Sabine Parish was divided into election districts encompassing parts of both Wards 3 and 5.

II.

**FACTS**

In March 1977, a local option election was held in Ward 3 of Sabine Parish. The citizens of Ward 3 voted to forbid the sale of alcoholic beverages in the ward. In the 1980s, Sabine Parish was divided into election districts. The impetus for the creation of election districts based on population in the 1980s appears to have been the parish's desire to comply with the federal mandate of "one man-one vote." *See King v. Caddo Parish Comm'n*, 31,098, p. 5 (La.App. 2 Cir. 12/22/98), 727 So.2d 545, 548, and *Stephens v. Madison Parish Police Jury*, 463 So.2d 609 (La.App. 2 Cir. 1984). When Election District 6 was created, part of Ward 3 and all of Ward 5 were

1

included. Ward 5 had not held a local option election; thus, the sale of alcoholic beverages was not prohibited in that ward.

On January 15, 2003, the Police Jury passed a resolution opposing the issuance of alcoholic beverage licenses in Ward 3. Thereafter, on January 23, 2003, Sabine Manufacturing, Inc. (Sabine Mfg.), which operates Toledo Town and Tackle (Town & Tackle) in Ward 3, applied to the State of Louisiana, Department of Alcohol and Tobacco Control, for a permit to sell beverages of high and low alcohol content at Town & Tackle. The State granted the license to Sabine Mfg. However, the Sheriff of Sabine Parish, Guffey Pattison, refused to issue a local license and Sabine Mfg. filed suit to obtain the local license.

In June 2003, Sabine Mfg. applied for both a state and local license to sell high and low alcoholic content beverages at Mr. C's Café, a restaurant Sabine Mfg. operates which is located also within the boundaries of Ward 3. Again, the state license was granted, but the Police Jury refused to issue a local license. Sabine Mfg. filed suit again. Thereafter, the Police Jury filed suit against the Commissioner of Alcohol and Tobacco Control and Sabine Mfg. to have the Commissioner's decision to grant liquor licenses to Sabine Mfg. reviewed. The Police Jury asserted that the state was prohibited from issuing a liquor license to Sabine Mfg. because Ward 3's previous local option election resulted in a prohibition against the sale of alcoholic beverages within its boundaries.

The three cases were consolidated for trial. At the conclusion of trial, the trial court rendered a judgment in favor of the Commissioner and Sabine Mfg. and ordered the Police Jury and Sheriff Pattison to issue local liquor licenses to Sabine Mfg. It is from this judgment that the Police Jury and Sheriff Pattison appeal.

## LAW AND DISCUSSION

The Police Jury and Sheriff Pattison contend that the sale of liquor remains prohibited in Ward 3 because it still retains some functions as a separate ward, *e.g.*, its road district, tax collecting and spending powers, fire protection and stock laws, and has not been totally abolished as a ward for these purposes. They argue that becoming a part of Election District 6 did not change the "dry" status of Ward 3. To the contrary, Sabine Mfg. and the Commissioner urge that once Ward 3 became part of Election District 6, a district that allows the sale of alcohol, its status as a "dry" ward was negated pursuant to La.R.S. 26:583.

Title 26 is the Alcoholic Beverage Control Law and its provisions regulate, among other aspects of controlling the sale of alcoholic beverages, local option elections. An election district is defined in La.R.S. 26:581(2) as a "district from which a parochial officer is elected but 'election district' does not include a district located entirely within an incorporated municipality." The election code defines "ward" as "a police jury ward in a parish and in parishes having no police jury wards means the subdivision of the parish equivalent to a police jury ward." La.R.S. 18:2(11).

In *King,* the case cited by the trial court in its judgment in this case, a portion of a previously established "dry" ward was encompassed within a later created election district. The issue in *King* was whether the portion of the ward that was within the new election district retained its "dry" status. The issue is the same in the present case. Ultimately, the court in *King* concluded that the ward did not retain its "dry" status once it became part of the election district.

At first glance, and in accordance with the appellants' arguments, it appears that the *King* decision is justified because throughout the opinion it referred

3

to the ward as the "old ward three." Appellants assert that the court's reference to the ward as the "old" ward indicates that the ward was abolished; thus, central to the *King* decision is the fact that the ward did not exist for any purpose once it was made part of the election district or, in other words, it was totally abolished. They argue that the ward at issue in the present case still exists for limited purposes and has not been declared abolished, unlike the ward in *King* which ceased to exist for all purposes. *King*, therefore, does not support the trial court's judgment. We disagree with the appellants' position.

Our reading of *King* is that the court's reference to the "old" ward three did not clearly imply that it was a thing of the past. Instead the use of the word "old" when discussing ward three appears to be nothing more than a way of distinguishing it from the newly formed election district. In *King*, the court cited with favor the second circuit case of *Stephens,* 463 So.2d 609. In *Stephens*, the court specifically concluded that the ward was abolished. However, on rehearing, the court noted that an old ward may continue to have some political function after restructuring, but reinstated the original opinion that a local option election in the old ward was negated. Consequently, it appears that neither *King* nor *Stephens* relied heavily on the abolishment of the respective wards for all purposes to conclude that they became a part of the new election district and were no longer "dry." It does appear that both cases focused on whether the wards were used for election purposes. In *Stephens*, the court noted that the "police jurors were elected from the newly created wards." *Stephens*, 463 So.2d at 611. Likewise, in *King*, the court noted:

> With *election district* being defined and both terms [*ward* and *election district*] being continued in the local option law, the controlling term in this appeal from *Caddo* Parish [as restructured] is *election district*, while in the case of a parish that continues to elect its governing body from *wards* [even though restructured], the controlling term *in the local option law* would be *ward. . . .* [T]he entity that

4

chooses a member of the parish governing body that is made a part of another *ward* or *election district* "shall take on the [wet or dry] characteristics . . . of [either] the ward [or] election district [as the case may be] . . . to which it is . . . made a part of. . . . [T]he statute . . . corroborates this conclusion by continuing to declare its intent "that the sale of [alcoholic] beverages covered by this Title [the local option law] be permitted or prohibited in an *entire ward* [or] *election district*. . . ."  § 583.

*King*, 727 So.2d at 549 (emphasis in original).

In the present case, the officials of the parish governing body, police jurors, are elected from election districts and not from wards. Thus, Election District 6 is the "parish governing authority," as stated in La.R.S. 26:583. Although there was a local option election prior to Ward 3 being made a part of Election District 6, there was no such election in Election District 6. As stated in *King,* a "newly created *ward*, or *election district*, respectively, as the case may be, is 'wet' until a local option election produces a dry vote and resulting ordinance in the respective entity." *King*, 727 So.2d at 549. We find that Ward 3 was made a part of Election District 6, from which the Parish's governing body is elected.

Despite Ward 3's continued existence for other purposes, it does not exist for the purpose of electing the parish's governing body. *King* and *Stephens* teach that it is not the abolishment of a particular ward for all purposes that is of importance in determining the wet or dry status of a previously "dry" political subdivision that is made part of a "wet" political subdivision. The central issue is whether the governing body of the parish is elected from the old political subdivision, that is "dry," or the new political subdivision, that is "wet." Since there has been no local option election in Election District 6 resulting in the prohibition of the sale of alcohol and police jurors in Sabine Parish are elected from Election Districts, Ward 3 takes on the characteristics of Election District 6 and is, therefore, "wet."

5

IV.

**CONCLUSION**

For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal, in the amount of $1,394.28, are assessed equally against the appellants, Sabine Parish Police Jury and Sheriff Guffey Pattison.

**AFFIRMED.**

# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 04-78 consolidated with 04-79 and 04-80

**SABINE PARISH POLICE JURY**

**VERSUS**

**COMMISSIONER OF ALCOHOL & TOBACCO CONTROL**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
ELEVENTH JUDICIAL DISTRICT COURT
PARISH OF SABINE, NO. 56,087
HONORABLE STEPHEN BRUCE BEASLEY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## JUDGE JOHN B. SCOFIELD
## DISSENTING

\*\*\*\*\*\*\*\*\*\*

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Glenn B. Gremillion, and John B. Scofield[*], Judges.

**Don M. Burkett**
**P. O. Box 1557**
**Many, LA 71449**
**Counsel for Plaintiff-Appellant**
        **Sabine Parish Police Jury**

**Donald G. Kelly**
**137 St. Denis Street**
**Natchitoches, LA 71458-0756**
**Counsel for Defendant-Appellee**
        **Commissioner of Alcohol & Tobacco Control**

**Celia R. Cangelosi**
**P. O. Box 3036**
**918 Government St., Suite 101**
**Baton Rouge, LA 70821**
**Counsel for Defendant-Appellee**
        **Commissioner of Alcohol & Tobacco Control**

---

[*] John B. Scofield, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

SCOFIELD, Judge[*], dissenting.

I respectfully disagree with the majority opinion affirming the trial court. I am of the opinion that in rendering its decision, the majority failed to adequately address the intent of the Louisiana legislature in enacting La.R.S. 26:583, as well as the intent of the Sabine Parish Police Jury in creating election districts.

The majority, as did the trial court, relies heavily upon the decision in *King v. Caddo Parish Com'n*, 31,098 (La.App. 2 Cir. 12/22/98), 727 So.2d 545. The *King* case has facts very similar to the case at hand, *i.e.*, a portion of a previously established "dry" ward was encompassed within a later created election district. The legal issue in *King* was whether the portion of the ward encompassed within the election district retained its dry status, the legal focus, as it is in this case, being on La.R.S. 26:583.

Initially, I would observe that there is a significant factual difference between this case and the *King* case. Central to the court's decision in *King* is the court's opinion that the ward at issue was no longer in existence, no longer a viable entity. In its decision, the court repeatedly refers to "*old* Ward Three", clearly implying that the ward was a thing of the past[1]. In the case at hand there is no evidence in the record that Ward Three in Sabine Parish was abolished. To the contrary, the undisputed evidence is that Ward Three is still very much in existence, having multiple, ongoing political purposes. Ronald Busby, Secretary-Treasurer of the Sabine Parish Police Jury, testified that Ward Three is still the basis for establishing and assessing taxes for

[*] John B. Scofield, participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.

[1] Two judges of the five judge panel in *King* dissented with written reasons. Their dissent takes issue with the majority's assumption that Ward three was no longer in existence, saying: "Here, the record does not contain evidence to establish that Ward Three has ceased to serve a political purpose, that ward has been abolished by action of the Parish Commission." *King*, 727 at 550.

1

road districts and fire protection districts as well as establishing boundaries for stock laws.

The *King* court cites with favor the case of *Stephens v. Madison Parish Police Jury*, 463 So.2d 609(La.App. 2 Cir. 1984) In *Stevens*, however, the court found that: "[a]s Old Ward 8 no longer served any political purpose, it was effectively abolished." *Id*. at 611. Consequently, both *King* and *Stevens* relied heavily on the assumption that the respective wards in each case had been abolished or no longer served any political purpose. The undisputed evidence here is that Ward Three in Sabine Parish still serves several political functions.

While the factual differences between this case and *King* are noteworthy, this case should turn on issues of law. In short, the decision should be based upon the meaning of La.R.S. 26:523. Did the legislature really intend that the creation of an election district for one purpose automatically annuls the longstanding vote of the people on a matter having a different purpose? I do not think so. With due deference to the majority, as well as the majority in *King*, I am of the opinion that they did not sufficiently analyze the controlling statute. Section A of the La.R.S. 26:583 provides as follows:

> A. When a portion of a ward, election district, or municipality is annexed or made a part of *another* ward, election district, municipality, or city-parish government, the portion annexed or made a part of shall take on the legal sales characteristics, as provided in this Chapter, of the ward, election district, municipality, or city-parish government to which it is annexed or made a part of.

> (Emphasis ours.)

For the purpose of the present analysis, the key word in Section A is "another." I am of the opinion that in this context the word "another" means "an additional

2

person or thing of the same type as already mentioned"[2] or "one . . . of the same kind."[3] More specifically, the statute is saying that the provisions of the act apply when "a portion of a ward . . . is annexed and made part of another ward . . ." Consistent with this usage of the word, a portion of a ward could not be made a portion of "another" election district. A ward and an election district are dissimilar entities. When referring to a ward, the only entity that would be one of the same type as already mentioned or of the same kind would be another ward.

To read the statute otherwise would be like saying a ward can become a part of "another" city, or an apple can be made part of "another" orange. If the legislature had intended to interpret the statute as the majority has done here, it could have phrased the pertinent part of Section A as follows; "When a portion of a ward, election district, or municipality is annexed or made part of *either a* ward, election district, municipality, or city-parish government . . ." The legislature did not so phrase Section 583, choosing rather to use the word "another" instead of "either a."[4] This court must give words of laws their generally prevailing meaning.

> The starting point for the interpretation of any statute is the language of the law itself. *Ginn v. Woman's Hospital Foundation, Inc.*, 02-1913, p. 9 (La.4/9/03), 842 So.2d 338, 344; *Rougeau v. Hyundai Motor America*, 01-1182, p. 5 (La.1/15/02), 805 So.2d 147, 151. Special rules for interpreting a statute (such as La. R.S. 9:2798.1) have been enacted by the legislative branch and are found in La. R.S. 1:1 *et seq.* Louisiana Revised Statute 1:3 provides, in pertinent part, that "[w]ords and phrases *shall* be read with their context and *shall* be

---

[2] Oxford American Dictionary. 2002.

[3] Webster's Third New International Dictionary, Unabridged. 1993.

[4] The appellants' attempt to introduce minutes of the house judiciary committee relative to the 1997 amendment of La.R.S. 26:583 was denied by the trial court. That amendment simply made the act applicable to election districts, supplementing its original application to only wards and municipalities. The proffered committee minutes recited a proponent of the amendment as saying: "The proposed legislation would correct the problem *in some areas that no longer have wards but have election districts*." (Emphasis added) While this proffered evidence is enlightening, it is not pivotal to this analysis.

3

construed according to the common and approved usage of the language" and the "word '*shall*' is mandatory." (Emphasis added.) Louisiana Revised Statute 1:4 provided that "[w]hen the wording of a Section [of a statute] is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit." The legislative branch also has provided general rules for interpreting laws in La. C.C. art. 9 *et seq*. *See*, in particular, La. C.C. arts. 9 and 11. We are bound by the language of a relevant law. *Allen v. State, through the Ernest N. Morial-New Orleans Exhibition Hall Authority*, 02-1072, p. 12 (La.4/9/03), 842 So.2d 373, 381.

*Gregor v. Argenot Great Cent. Ins. Co.*, 02-1138, pp. 6-7 (La. 5/20/03), 851 So.2d 959, 964 (footnote omitted).

The interpretation that I am giving Section A of the statute is consistent with the provisions of Section B of the statute which provides that: "it [is] the intention of this Chapter that the sale of beverages covered by this Title be permitted or prohibited only in an entire ward, election district, or incorporated municipality and not in any portion thereof." Section B is saying, as it pertains to Ward Three, that either all of that ward must be wet or none of it is wet. The majority does not address what happens to that part of Ward Three which was not included in Election District Six. Does it remain dry? To allow part of Ward Three to remain dry while mandating that the remainder of the ward become wet, in spite of the will of the voters of that ward as expressed in the local option election, clearly contravenes Section B of La.R.S. 26:583. Ward Three apparently ends up being part wet and part dry. As to the sanctity given a vote of the people themselves, as compared to a vote of a legislative body such as a police jury, the court in *Hughes v. Parish Council of Parish of East Baton Rouge*, 48 So.2d 823, 832 (La.App. 1 Cir. 1950) stated:

> It is hardly conceivable that the Legislature of the State of Louisiana would grant to the people of the various political subdivisions, a right by ballot to create dry territories and at the same time, vest in the Police Jury a right to wipe out this exercise of the ballot by the simple procedure of redistricting the parish. The redistricting of the ward lines for the Parish of East Baton Rouge was done without any mention

whatsoever as to the local option question and we do not think that the Police Jury of a parish can take it upon itself and negative a vote on local option by exercising its right granted it by changing the rearranging ward lines. In a case of this kind, we do not think that a prohibitory law such as that in question here, voted upon and adopted by a ward can be repealed or defeated in its operation by any subsequent act of the governing authorities of the Parish of East Baton Rouge, by a simple change of boundaries of an election district or ward. We say this especially in view of the absence of any election held subsequent to the election might negative the special referendum of the original Ward Four in 1937, which then held declaring said ward 'dry.'

I do not believe the legislature intended that the direct vote of the people of Ward Three could be so easily cast aside as the decision of the majority now mandates.

The election districts in question were created by a simple ordinance of the Sabine Parish Police Jury. The fact that the Police Jury may have been motivated by federal legislation to pass the ordinance, does not alter a whit that the election districts are creatures solely of the Police Jury. The one purpose of the Police Jury was to create districts from which members of the legislative arm of the Parish, the Police Jury, would be elected. In passing the ordinance, the Police Jury had no intention of altering judicial districts, school board districts, fire districts, road districts, certain taxing districts, et cetera. The Police Jury certainly had no intention of abolishing the wards in that parish, nor did the Police Jury intend to abolish or alter in any way the dry status of Ward Three. To the contrary, the Police Jury's keen intent to preserve the dry status of Ward Three could not be more clearly demonstrated than by the Police Jury's vigorous defense of the vote of the people of Ward Three in these very law suits.

The law plainly requires courts to give great weight to the interpretation given an ordinance by the governing body which had enacted it. *Kneipp v. City of Shreveport*, 550 So.2d 748 (La.App. 2 Cir. 1989); *Little Giant Food Stores, Inc. v. State, Dept. of Public Safety through Com'r of Alcoholic Beverage Control*, 416 So.2d

5

128 (La.App. 2 Cir. 1982); *Huppenbauer v. Kissinger*, 254 So.2d 636 (La.App. 4 Cir. 1971). Here, the majority not only fails to give great weight to the Sabine Parish Police Jury's interpretation of its own ordinance creating the election districts, it seems to give it no weight at all.

I am of the opinion that the majority decision also runs contrary to other pertinent statutes of the legislature. For instance, in the Alcoholic Beverage Control Law, particularly La. R.S. 26:81, the legislature provides, in pertinent part that:

> A. No permit shall be granted under this Chapter in contravention of any municipal or parish ordinances adopted pursuant to the zoning laws of the state.
>
> B. (1) No permit shall be issued by the commissioner or by any municipality or parish to authorize any business in any subdivision of the state where the business has been prohibited by referendum vote.

Additionally, another section of the Alcoholic Beverage Control Law, La.R.S. 26:273(A)(1) provides that:

> A. No permit shall be granted under this Chapter in contravention of any municipal or parish ordinances adopted pursuant to the zoning laws of the state.
>
> B. (1) No permit shall be issued by the commissioner or by any municipality or parish to authorize any business in any subdivision of the state where the business has been prohibited by referendum vote.

Both of these statutory provisions seem to clearly prohibit the Commissioner of Alcohol & Tobacco Control from issuing the permits in question.

For the foregoing reasons, I would reverse the judgment of the trial and, therefore, I respectfully dissent from the opinion of the majority.