B SCOFIELD, Judge *,
dissenting.
I respectfully disagree with the majority opinion affirming the trial court. I am of the opinion that in rendering its decision, the majority failed to adequately address the intent of the Louisiana legislature in enacting La.R.S. 26:583, as well as the intent of the Sabine Parish Police Jury in creating election districts.
The majority, as did the trial court, relies heavily upon the decision in King v. Caddo Parish Com’n, 31,098 (La.App. 2 Cir. 12/22/98), 727 So.2d 545. The King case has facts very similar to the case at hand, ie., a portion of a previously established “dry” ward was encompassed within a later created election district. The legal issue in King was whether the portion of the ward encompassed within the election district retained its dry status, the legal focus, as it is in this case, being on La.R.S. 26:583.
Initially, I would observe that there is a significant factual difference between this case and the King case. Central to the court’s decision in King is the court’s opinion that the ward at issue was no longer in existence, no longer a viable entity. In its decision, the court repeatedly refers to “old Ward Three”, clearly implying that the ward was a thing of the past [1] In the case at hand there is no evidence in the record that Ward Three in Sabine Parish was abolished. To the contrary, the undisputed evidence is that Ward Three is still very much in existence, having multiple, ongoing political purposes. Ronald Busby, Secretary-Treasurer of thel2Sabine Parish Police Jury, testified that Ward Three is still the basis for establishing and assessing taxes for road districts and fire protection districts as well as establishing boundaries for stock laws.
The King court cites with favor the case of Stephens v. Madison Parish Police Jury, 463 So.2d 609(La.App. 2 Cir.1984) In Stephens, however, the court found that: “[a]s Old Ward 8 no longer served any political purpose, it was effectively abolished.” Id. at 611. Consequently, both King and Stephens relied heavily on the assumption that the respective wards in each case had been abolished or no longer served any political purpose. The undisputed evidence here is that Ward Three in Sabine Parish still serves several political functions.
While the factual differences between this case and King are noteworthy, this case should turn on issues of law. In short, the decision should be based upon the meaning of La.R.S. 26:523. Did the legislature really intend that the creation of an election district for one purpose automatically annuls the longstanding vote of the people on a matter having a different purpose? I do not think so. With due *873 deference to the majority, as well as the majority in King, I am of the opinion that they did not sufficiently analyze the controlling statute. Section A of the La.R.S. 26:583 provides as follows:
A. When a portion of a ward, election district, or municipality is annexed or made a part of mother ward, election district, municipality, or city-parish government, the portion annexed or made a part of shall take on the legal sales characteristics, as provided in this Chapter, of the ward, election district, municipality, or city-parish government to which it is annexed or made a part of. (Emphasis ours.)
For the purpose of the present analysis, the key word in Section A is “another.” I am of the opinion that in this context the word “another” means “an additional | ¡¡person or thing of the same type as already mentioned”[2] or “one ... of the same kind.”[3] More specifically, the statute is saying that the provisions of the act apply when “a portion of a ward ... is annexed and made part of another ward ...” Consistent with this usage of the word, a portion of a ward could not be made a portion of “another” election district. A ward and an election district are dissimilar entities. When referring to a ward, the only entity that would be one of the same type as already mentioned or of the same kind would be another ward.
To read the statute otherwise would be like saying a ward can become a part of “another” city, or an apple can be made part of “another” orange. If the legislature had intended to interpret the statute as the majority has done here, it could have phrased the pertinent part of Section A as follows; “When a portion of a ward, election district, or municipality is annexed or made part of either a ward, election district, municipality, or city-parish government ...” The legislature did not so phrase Section 583, choosing rather to use the word “another” instead of “either a.” [4] This court must give words of laws their generally prevailing meaning.
The starting point for the interpretation of any statute is the language of the law itself. Ginn v. Woman’s Hospital Foundation, Inc., 02-1913, p. 9 (La.4/9/03), 842 So.2d 338, 344; Rougeau v. Hyundai Motor America, 01-1182, p. 5 (La.1/15/02), 805 So.2d 147, 151. Special rules for interpreting a statute (such as La. R.S. 9:2798.1) have been enacted by the legislative branch and are found in La. R.S. 1:1 et seq. Louisiana Revised Statute 1:3 provides, in pertinent part, that “[w]ords and phrases shall be read with their context and shall be 1 ¿construed according to the common and approved usage of the language” and the “word ‘shall’ is mandatory.” (Emphasis added.) Louisiana Revised Statute 1:4 provided that “[w]hen the wording of a Section [of a statute] is clear and free of ambiguity, the letter of it shall not be disregarded under the pretext of pursuing its spirit.” The legislative branch also has provided general rules for interpreting laws in La. C.C. *874 art. 9 et seq. See, in particular, La. C.C. arts. 9 and 11. We are bound by the language of a relevant law. Allen v. State, through the Ernest N. Morial-New Orleans Exhibition Hall Authority, 02-1072, p. 12 (La.4/9/03), 842 So.2d 373, 381.
Gregor v. Argenot Great Cent. Ins. Co., 02-1138, pp. 6-7 (La.5/20/03), 851 So.2d 959, 964 (footnote omitted).
The interpretation that I am giving Section A of the statute is consistent with the provisions of Section B of the statute which provides that: “it [is] the intention of this Chapter that the sale of beverages covered by this Title be permitted or prohibited only in an entire ward, election district, or incorporated municipality and not in any portion thereof.” Section B is saying, as it pertains to Ward Three, that either all of that ward must be wet or none of it is wet. The majority does not address what happens to that part of Ward Three which was not included in Election District Six. Does it remain dry? To allow part of Ward Three to remain dry while mandating that the remainder of the ward become wet, in spite of the will of the voters of that ward as expressed in the local option election, clearly contravenes Section B of La.R.S. 26:583. Ward Three apparently ends up being part wet and part dry.
As to the sanctity given a vote of the people themselves, as compared to a vote of a legislative body such as a police jury, the court in Hughes v. Parish Council of Parish of East Baton Rouge, 48 So.2d 823, 832 (La.App. 1 Cir.1950) stated:
It is hardly conceivable that the Legislature of the State of Louisiana would grant to the people of the various political subdivisions, a right by ballot to create dry territories and at the same time, vest in the Police Jury a right to wipe out this exercise of the ballot by the simple procedure of redistricting the parish. The redistricting of the ward lines |Rfor the Parish of East Baton Rouge was done without any mention whatsoever as to the local option question and we do not think that the Police Jury of a parish can take it upon itself and negative a vote on local option by exercising its right granted it by changing the rearranging ward lines. In a case of this kind, we do not think that a prohibitory law such as that in question here, voted upon and adopted by a ward can be repealed or defeated in its operation by any subsequent act of the governing authorities of the Parish of East Baton Rouge, by a simple change of boundaries of an election district or ward. We say this especially in view of the absence of any election held subsequent to the election might negative the special referendum of the original Ward Four in 1937, which then held declaring said ward ‘dry.’
I do not believe the legislature intended that the direct vote of the people of Ward Three could be so easily cast aside as the decision of the majority now mandates.
The election districts in question were created by a simple ordinance of the Sabine Parish Police Jury. The fact that the Police Jury may have been motivated by federal legislation to pass the ordinance, does not alter a whit that the election districts are creatures solely of the Police Jury. The one purpose of the Police Jury was to create districts from which members of the legislative arm of the Parish, the Police Jury, would be elected. In passing the ordinance, the Police Jury had no intention of altering judicial districts, school board districts, fire districts, road districts, certain taxing districts, et cetera. The Police Jury certainly had no intention of abolishing the wards in that parish, nor did the Police Jury intend to abolish or *875 alter in any way the dry status of Ward Three. To the contrary, the Police Jury’s keen intent to preserve the dry status of Ward Three could not be more clearly demonstrated than by the Police Jury’s vigorous defense of the vote of the people of Ward Three in these very law suits.
The law plainly requires courts to give great weight to the interpretation given an ordinance by the governing body which had enacted it. Kneipp v. City of Shreveport, 550 So.2d 748 (La.App. 2 Cir.1989); Little Giant Food Stores, Inc. v. State, Dept. of Public Safety through Com’r of Alcoholic Beverage Control, 416 So.2d 128 (La.App. 2 Cir.1982); Huppenbauer v. Kissinger, 254 So.2d 636 (La.App. 4 Cir.1971). Here, the majority not only fails to give great weight to the Sabine Parish Police Jury’s interpretation of its own ordinance creating the election districts, it seems to give it no weight at all.
I am of the opinion that the majority decision also runs contrary to other pertinent statutes of the legislature. For instance, in the Alcoholic Beverage Control Law, particularly La. R.S. 26:81, the legislature provides, in pertinent part that:
A. No permit shall be granted under this Chapter in contravention of any municipal or parish ordinances adopted pursuant to the zoning laws of the state.
B. (1) No permit shall be issued by the commissioner or by any municipality or parish to authorize any business in any subdivision of the state where the business has been prohibited by referendum vote.
Additionally, another section of the Alcoholic Beverage Control Law, La.R.S. 26:273(A)(1) provides that:
A. No permit shall be granted under this Chapter in contravention of any municipal or parish ordinances adopted pursuant to the zoning laws of the state.
B. (1) No permit shall be issued by the commissioner or by any municipality or parish to authorize any business in any subdivision of the state where the business has been prohibited by referendum vote.
Both of these statutory provisions seem to clearly prohibit the Commissioner of Alcohol & Tobacco Control from issuing the permits in question.
For the foregoing reasons, I would reverse the judgment of the trial and, therefore, I respectfully dissent from the opinion of the majority.

. Two judges of the five judge panel in King dissented with written reasons. Their dissent takes issue with the majority's assumption that Ward three was no longer in existence, saying: “Here, the record does not contain evidence to establish that Ward Three has ceased to serve a political purpose, that ward has been abolished by action of the Parish Commission.’’ King, 727 at 550.

. Oxford American Dictionary.2002.

. Webster's Third New International Dictionary, Unabridged. 1993.

. The appellants' attempt to introduce minutes of the house judiciary committee relative to the 1997 amendment of La.R.S. 26:583 was denied by the trial court. That amendment simply made the act applicable to election districts, supplementing its original application to only wards and municipalities. The proffered committee minutes recited a proponent of the amendment as saying: "The proposed legislation would correct the problem in some areas that no longer have wards hut have election districts.” (Emphasis added) While this proffered evidence is enlightening, it is not pivotal to this analysis.