CARAWAY, J.
 

 11 The redistricting of the parish into election districts for the election of police jurors in 2002 caused this dispute over the continuing effect of a prior local option election which had prohibited the sale of alcoholic beverages. Plaintiff attempted to apply for a permit to sell alcohol for its business that is located in a new election district. The area comprising the new election district had been voted “dry” in 1974 by a local option election conducted in a ward of the parish which included in part the area now comprising the election district. After 2002, police jurors were no longer elected throughout the ward, as each parish police juror is now elected from an election district. The parish police jury denied plaintiffs permit, maintaining that the area of the new election district remains “dry.” Plaintiff filed this action seeking a license. After a joint stipulation of the facts and motions for summary judgment, the trial court ruled in favor of the plaintiff and ordered the issuance of a permit to sell alcoholic beverages. The police jury appeals, and for the following reasons, we reverse the ruling of the district court and grant judgment in defendant’s favor, dismissing plaintiffs claims.
 

 Facts
 

 This case comes before this court on cross-motions for summary judgment filed by Outpost Travel Centers, L.L.C. (“Outpost”) and the Webster Parish Police Jury (“Police Jury”) relative to the Police Jury’s denial of a liquor license for the truck stop operated by Outpost. The truck stop is located in Webster Parish, outside the city limits of Minden.
 

 |2The parties stipulated the following facts. Until 2002, Webster Parish was divided into Ward One and Ward Two which were governed by the Police Jury. Members of the Police Jury were formerly elected from both wards. Outpost is located within the boundaries of Ward One, as is the City of Minden. On November 23, 1974, a local option election held in Ward One resulted in a “dry” vote that prohibited the sale of alcoholic beverages. Ordinances by the Police Jury and the City of Minden followed which prohibited the sale of alcoholic beverages in all of Ward One including the City of Minden and unincorporated portions of Ward One.
 

 
 *1047
 
 In 2002, Webster Parish was redistricted into 12 Election Districts for the election of a police juror in each election district, replacing the two-ward system for such elections. The Outpost truck stop is located in Election District 6. Election District 6 was created from an area of the parish which is partly within and partly outside of the City of Minden, yet entirely within the limits of former Ward One. No local option election regarding the sale of alcohol has occurred throughout Election District 6 since its creation.
 

 Outpost was twice denied permits to sell beverages of low and high alcoholic content on November 5 and 17, 2008, by the Police Jury. The basis for the denial was that Outpost was “located in a section of the parish that is considered dry and alcohol sales are not permitted.”
 

 After considering the stipulations submitted by the parties and the arguments of counsel, the trial court granted summary judgment in favor of Outpost, thus awarding it a liquor license' and denying the Police Jury’s summary judgment. This appeal by the Police Jury ensued.
 

 |3
 
 Discussion
 

 Louisiana’s local option law, La. R.S. 26:581,
 
 et seq.,
 
 provides the authority of parish and municipal governing bodies to hold local referendum elections to determine whether or not the selling of alcoholic beverages shall be conducted and licensed in their jurisdictions. La. R.S. 26:582. Without such local option elections and a vote against the selling of alcoholic beverages, parishes and municipalities were not permitted to prohibit such business.
 
 See, State v. Sissons,
 
 292 So.2d 523 (La.1974), reviewing the legislative history of the local election law after the repeal of federal prohibition. Therefore, any ordinance prohibiting the sale of alcoholic beverages which is not predicated on a valid local option election is null and void.
 
 Tolar v. State,
 
 315 So.2d 22 (La.1975);
 
 Froeba v. State, Dep’t of Public Safety, Office of Alcoholic Beverage Control,
 
 369 So.2d 727 (La.App. 3d Cir.1979),
 
 writ denied,
 
 371 So.2d 615 (La.1979).
 

 It is undisputed in this case that in 1974 a local option election occurred in Ward One and the City of Minden and that the vote of the electors was to prohibit the sale of alcoholic beverages. The Ward One area of Webster Parish which was thus voted “dry” includes all of the geographical area which became Election District 6 in 2002. While Election District 6 does not coincide with all of the area of Ward One, it was a subdivided portion created entirely from a part of Ward One.
 

 After the prohibition of alcoholic beverages by the local option election process, the reconfiguration or restructuring of parish wards and the new designation or labeling of former wards or portions of wards as election ^districts
 
 [1]
 
 became the source of much dispute over the continuing effect of a prior local option election and the prohibition on alcohol.
 
 Blanchard v. Gauthier,
 
 248 La. 1107, 184 So.2d 531 (1966) (hereinafter
 
 “Blanchard”)', Sabine Parish Police Jury v. Com’r of Alcohol & Tobacco Control,
 
 04-1833 (La.4/12/05), 898 So.2d 1244 (hereinafter
 
 “Sabine
 
 ”);
 
 King v. Caddo Parish Com’n,
 
 31,098 (La.App.2d Cir.12/22/98), 727 So.2d 545. Also, following the
 
 Blanchard
 
 ruling in 1966, legisla
 
 *1048
 
 tion was enacted regarding this controversy which now, after various amendments, is La. R.S. 26:583 (hereinafter “Section 583”). Whether the 1974 local option election and prohibition ordinance remain in force in Election District 6 prohibiting Outpost’s demands for a liquor license must be answered after a review of this jurisprudence and consideration of Section 583.
 

 In
 
 Blanchard,
 
 a “dry” ward was incorporated into a newly configured ward containing “wet” areas of the parish which had never prohibited the sale of alcoholic beverages by the local option election process. The Louisiana Supreme Court held that the area of the former “dry” ward would
 
 remain
 
 “dry” until a subsequent local option election for the new ward might change that status. The effect of the ruling was that part of the new ward remained “dry,” and in the other part of the ward, there was no prohibition. The court accepted the following premise as justification for the ruling:
 

 |sIf it is proper to say that a Status has been created by vote of the electors to make the territory “dry,” then it would seem to follow that a vote of the entire electorate to change the form of government whereby “dry” wards are consolidated and merged with “wet” wards does not effect a legal change in status.
 

 Id.,
 
 184 at 534.
 

 Before consideration of the legislative change effected by Section 583 after
 
 Blanchard
 
 and the Supreme Court’s important recent ruling in the
 
 Sabine
 
 case, we believe it important to mark
 
 Blanchard’s
 
 use of the verb “merged” in describing the consolidation of the former “wet” and “dry” areas of the parish used in that case to create the new ward. In this respect, we agree with the Police Jury’s argument in this case that no merger of the geographical areas of separate wards occurred in the 2002 creation of Election District 6. In contrast, Election District 6’s geographical area is merely a subdivision of the territory that once comprised Ward One. Thus, with this clear factual distinction, if the territorial vote principle which
 
 Blanchard
 
 applied to the merged wards remains an important policy, then,
 
 a fortio-ri.,
 
 that principle should protect and enforce the “dry” vote of 1974 for the entire area of Election District 6 which was never merged with any “wet” area of the parish. Yet, Outpost maintains that the enactment of Section 583 after the
 
 Blanchard
 
 ruling and the statute’s interpretation in the recent
 
 Sabine
 
 decision are controlling and mandate a new local option election for Election District 6.
 

 A clear legislative response to
 
 Blanchard
 
 occurred with Act No. 208 of 1968, which is the source legislation of what is now Section 583. The enactment provided a new section under our local option law and was Ren titled, “Effect of merger.” In relevant part, Section 583 now reads as follows:
 

 A. When a portion of a ward, election district, or municipality is annexed or made a part of another ward, election district, municipality, or city-parish government, the portion annexed or made a part of shall take on the legal sales characteristics, as provided in this Chapter, of the ward, election district, municipality, or city-parish government to which it is annexed or made a part of.
 

 B. The provisions of this Section shall be applicable to any election previously called under this Title or any other local option law and to any territory covered by such election which has subsequently been merged with another ward, election district, incorporated municipality, or portion thereof or whose boundary has been changed, it being the intention of this Chapter that the sale of beverages
 
 *1049
 
 covered by this Title be permitted or prohibited only in an entire ward, election district, or incorporated municipality and not in any portion thereof.
 

 * ⅜ *
 

 Broadly speaking, Section 583 indicates that the “merger” of “a portion of a ward” with “a part of another ward” is governed by the statute’s rule that the sale of alcoholic beverages or the prohibition of such sales in the new ward be uniform throughout the “entire ward,” and “not in any portion thereof.” The statute therefore expressly addresses the factual setting of
 
 Blanchard
 
 involving the merger of parts of former wards and overrules its result which sanctioned a new ward containing “wet” and “dry” areas. Yet, as aptly observed by our supreme court in its recent application of the statute in
 
 Sabine,
 
 Section 583 is not “a model of clarity,” regarding reconfiguration or consolidation of wards into election districts.
 
 Sabine, supra
 
 at 1256.
 

 Two issues with less than clear guidance from the statute were present in
 
 Sabine
 
 and in
 
 King, supra,
 
 decided by this court. In both cases, a 17portion of a “dry” ward and a portion of a “wet” ward were combined for the creation of a new election district when both parishes restructured the parish governance system. In both cases, Section 583 was found controlling and the rule of
 
 Blanchard
 
 was rejected. In both cases, the status of the portion of the “wet” ward, or in the language of Section 583 its “legal sales characteristics,” was determined to control over the portion of the “dry” ward included in the new election district, and within the entire election district the sale of alcoholic beverages was uniformly permitted.
 

 The issues in
 
 Sabine
 
 and
 
 King
 
 with which both courts wrestled involve the following weaknesses in the legislative expressions of Section 583. First, the “merger” addressed in the language of Subsection A of Section 583 appears to envision the merger of
 
 existing
 
 political entities or portions thereof, with “the legal sales characteristics” of one of the existing political entities to control over the other. Nevertheless, in
 
 Sabine
 
 and
 
 King,
 
 portions of existing wards were combined to
 
 create
 
 a previously nonexistent political subdivision, the new election district. Without expressly reconciling this weakness in the language of Subsection A, the
 
 Sabine
 
 ruling instead emphasized the uniformity principle of Subsection B. Thus, the entire area of the newly created election district was required to be uniform concerning the sale or prohibition of alcoholic beverages after the merger of the portions of the former wards. The
 
 Blanchard
 
 jurisprudential rule was rejected because Section 583 and its legislative choice for uniformity prevailed.
 

 IsSecond, with the supreme court’s application of Section 583 to the restructuring of the parish from the ward system to the election district system, there was also a statutory issue in
 
 Sabine
 
 concerning which “legal sales characteristics” of which portion of the new election district should be imposed uniformly. When one portion of a “dry” ward is combined with a part of another “wet” ward, the statute does not explain which ward can be said to have been “made a part” of the other. That distinction is critical for the application of the “legal sales characteristics” of one of the former wards over the other. Applying the statute, both
 
 Sabine
 
 and
 
 King
 
 found that the “legal sales characteristics” of the portion of the “wet” ward “trumped” the prohibition of alcoholic sales in the portion of the “dry” ward, so that the sale of alcoholic beverages was permitted in the entirety of the newly created election districts. Though not specifically expressed
 
 *1050
 
 in the statute, the reason that the “wet” ward’s “legal sales characteristics” must control in a new “merged” ward or election district is because of the bedrock principle of Louisiana’s local option law. Without a local option election and a vote against the selling of liquor in the “wet” area of the newly configured ward or election district, the parish is never permitted to impose prohibition on such area of the new political subdivision, not even under the pre-statutory
 
 Blanchard
 
 rule. The uniformity rule of Section 583 therefore requires that sales of alcoholic beverages be permitted in the entirety of the newly created parish subdivision (ward or election district) when only the smallest of “wet” areas is included.
 

 13With this understanding of the statute, it is important to note for the present dispute that the uniformity rule of Section B of Section 583 also expressly recognizes that the sale of beverages in the new ward or election district might at times be “prohibited” after a merger. “[I]t being the intention [of Section 583] that the sale of beverages ... be permitted or prohibited only in an entire ... election district.” La. R.S. 26:583(B). Prohibition is therefore clearly envisioned after merger under Section 583 if the entire area included in the new election district had voted for prohibition through previous local option elections.
 

 From this review of Section 583 as applied in
 
 Sabine,
 
 we reject Outpost’s arguments that a new local option election for Election District 6 was required upon its creation in 2002 to determine whether the sale of alcoholic beverages could be prohibited. In the first place, there was no “merger” of areas of multiple wards with differing “legal sales characteristics” involved in the creation of Election District 6. The territorial area of Election District 6 is a subdivision of Ward One and the entire subdivided area was previously been voted dry. Clearly, the express language of Subsection A of Section 583 does not address the manner in which . Election District 6 was created. Therefore, with Section 583 inapplicable, the territorial vote principle of
 
 Blanchard
 
 continues as controlling so as not to thwart the will of people from the vote in 1974 for this portion of Ward One which became the new political subdivision. Moreover, even if Section 583 might apply, despite its language in Subsection A, the uniformity rule of Subsection B will be completely [ inhonored in this case by continuing the prohibition of alcoholic beverages in the entire subdivided ward which now comprises the new election district.
 

 Conclusion
 

 For the foregoing reasons, the judgment of the trial court is reversed. Summary judgment is granted in favor of the Police Jury dismissing Outpost’s claims. Costs of this appeal are assessed to Outpost.
 

 REVERSED.
 

 [1]
 

 . The redistricting or restructure of parish governance for compliance with the federal voting rights act led to the creation of “election districts” in some parishes, while others retained the "ward” terminology for the election of police jurors. In 1997, the legislature defined in La. R.S. 26:581(2) "election district” as "a district from which a parochial officer is elected,” and authorized a parish election district to hold local option elections under La. R.S. 26:582, which had formerly only employed the "ward” terminology.